UNITED STATES of America,
Appellee–Cross–Appellant,

v.

Joseph SAVARESE, aka "Joe Dinga", Carmine Russo, aka "Baby Carmine", Elio Albanese, aka "Chinatown", Nicholas Fiorello, aka "Larry K. Nick", George Diplacidi, aka "Georgie", Ramona Reynolds, Craig A. Reynolds, Natalie Delutro, Defendants,

Anthony Capanelli, aka "Little Anthony", Defendant–Appellant–Cross–Appellee.

Docket Nos. 03–1376, 03–1439.

United States Court of Appeals,
Second Circuit.

Argued: Dec. 10, 2004.

Decided: April 14, 2005.

Marc Fernich, Law Office of Marc Fernich, New York, N.Y. (Scott E. Leemon, Law Offices of Scott E. Leemon, P.C., New York, NY, Bruce Allen Smirti, Bruce

A. Smirti, P.C., Garden City, NY, on the brief) for Defendant–Appellant.

Edward C. O'Callaghan, Assistant United States Attorney, New York, N.Y. (David N. Kelley, United States Attorney for the Southern District of New York, New York, NY, David Raskin, Laura Grossfield Birger, Assistant United States Attorneys, New York, NY, on the brief) for Appellee.

Before: OAKES, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

Defendant-appellant Anthony Capanelli was convicted, following a jury trial in the United States District Court for the Southern District of New York (Haight, *J.*), of having acted as the "inside man" in a conspiracy to rob the Employee Federal Credit Union at the New York Times plant in College Point, Queens, in violation of 18 U.S.C. § 371. Capanelli contends that the evidence was insufficient to support his conviction; that the district court allowed multiplicitous counts in the indictment and erroneously admitted into evidence copies of certain digital recordings; and that the court inappropriately applied a five-point sentencing enhancement for possession of a firearm where no one possessed any firearm.

We affirm the conviction, but we conclude that the district court inappropriately applied the five-point firearm enhancement, and remand to the district court with instructions to vacate the sentence and to conduct resentencing consistent with this opinion and *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and not inconsistent with *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005).

## I

▮ Because Capanelli appeals his conviction after a jury trial, " 'our statement of the facts views the evidence in the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor.' " *United States v. Monaco*, 194 F.3d 381, 383 (2d Cir.1999) (quoting *United States v. Salameh*, 152 F.3d 88, 107 n. 1 (2d Cir.1998) (*per curiam* )).

In October 2000, a conspiracy was hatched to rob the College Point facility. The plan was for several conspirators to enter the premises using Times parking passes and wearing Times employee uniforms, to restrain the security guards once inside, and to steal the money. Some of the planning was taped by an undercover FBI agent and a government informant, both of whom were posing as co-conspirators in the planned robbery. With the April 2001 arrest of dozens of mobsters, including co-conspirator Joseph Savarese, the College Point robbery was postponed until the holidays. The conspirators were arrested on December 5, 2001, and the robbery never took place.

▮ Although Capanelli attended none of the recorded meetings, co-conspirator Nicholas Fiorello is recorded telling others that he obtained information necessary to the conspiracy from an inside guy. There is no dispute that Capanelli sometimes worked as a pressman both at the Times College Point facility and at the old printing plant of the New York Post in lower Manhattan. The government adduced the following evidence to prove that Capanelli was the inside guy: a videotaped encounter between Fiorello and Capanelli outside the Post plant at or about the time Fiorello undertook (without success) to introduce the inside guy to the other conspirators; two sketches, with Capanelli's handwriting (but not his fingerprints), which were said by Fiorello to have been supplied by the inside guy, and which showed where the money was at the College Point plant;

Times pressmen shirts, patches, and union flyers, which were given to Fiorello by the inside guy and which could easily have been procured by a pressman at the Times facility; and the statement by one of the conspirators that the inside guy was named "Anthony Canterello, Campanello."

All that constitutes sufficient evidence to support Capanelli's conviction. *See United States v. Autuori,* 212 F.3d 105, 114 (2d Cir.2000) (this Court "must uphold the jury's verdict if we find that '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'") (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

## II

Although the government's evidence suggested that certain of the conspirators contemplated using guns in connection with the robbery, no evidence was presented that any conspirator actually procured a firearm or attempted to do so. Capanelli contends that, given these facts, the district court erred in applying a five-point enhancement for brandishing or possessing a firearm pursuant to U.S.S.G. § 2B3.1(b)(2)(C).[1]

■ "Ordinarily, post-*Booker,* we would remand for the district court to consider whether the original sentence—imposed pre-*Booker* on the then-valid mandate of the Guidelines—would have been different if the district judge had appreciated his discretion to frame the sentence based on the fact that the Guidelines are advisory." *United States v. Rubenstein,* 403 F.3d 93, 98, 2005 WL 730081 at *4, 2005 U.S.App. LEXIS 5156, at *12 (2d Cir. March. 31, 2005) (citing *Crosby,*

397 F.3d at 117–18). Where, as here, a sentencing error "may have an appreciable influence even under the discretionary sentencing regime that will govern the resentencing" this Court *may* vacate the sentence, to "obviate[ ] any future challenge to the reasonableness of a discretionary sentence on the ground that it was made under the influence of these enhancement rulings." *Rubenstein,* 403 F.3d at 99, 2005 WL 730081 at *4, 2005 U.S.App. LEXIS 5156, at *12 . Such a ruling "does not, however, foreclose future reasonableness review" and "express[es] no opinion as to whether an incorrectly calculated Guidelines sentence could nonetheless be reasonable." *Id.* at 99, 2005 WL 730081 at *4, 2005 U.S.App. LEXIS 5156, at *12–13.

The Guidelines sentence for conspiracy is calculated as "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. § 2X1.1(a). The Guidelines concept of "intended offense conduct" is clarified: "[T]he only specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred." U.S.S.G. § 2X1.1, Application Note 2. The base offense level for robbery (20) is to be enhanced by five points "if a firearm was brandished or possessed." U.S.S.G. § 2B3.1(b)(2)(C).

■ Thus the base offense level for a conspiracy to commit robbery is enhanced (from 20 to 25) where it can be established with *reasonable certainty* that the conspirators *specifically intended* that a firearm be brandished or possessed, although it is unnecessary that any brandishing or pos-

---

**1.** In his reply brief, Capanelli further contends that the application of this enhancement violates his Sixth Amendment rights under *Blakely v. Washington,* — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *See United States v. Booker,* — U.S. —, 125

S.Ct. 738, 160 L.Ed.2d 621 (2005). As we conclude that the firearm enhancement was inappropriately applied and vacate Capanelli's sentence on that ground, we need not reach Capanelli's Sixth Amendment argument.

session *actually occurred. See United States v. Downing,* 297 F.3d 52, 65 (2d Cir.2002) ("[W]hen specific offense characteristics have not actually occurred, they should be applied only if the district court determines that they were 'specifically intended.'"); *see also United States v. Waskom,* 179 F.3d 303, 314–15 (5th Cir.1999) (enhancement under U.S.S.G. § 2X1.1 and § 2B3.1(b)(2) appropriate where "the record established with reasonable certainty that the conspirators intended to detonate explosive devices"). This sentencing structure accords with the rule that a criminal conspiracy is defined by the conspirators' unlawful agreement. *See United States v. Mittelstaedt,* 31 F.3d 1208, 1218 (2d Cir.1994) ("The gist of the crime of conspiracy as defined by [18 U.S.C. § 371] is the agreement ... to commit one or more unlawful acts, from which it follows that the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.") (internal alterations and quotation marks omitted).

In applying the § 2B3.1(b)(2)(C) enhancement to Capanelli's sentence, the district court stated that "the proper test" was "whether it was *reasonably foreseeable* that a firearm would be brandished or possessed during the commission of the robbery" and that "the question comes down to ... whether the evidence shows that the conspirators in this case ... could have *reasonably foreseen* the use or brandishing by at least one coconspirator during the course of the contemplated robbery." (Emphasis added). As Capanelli argues, this formulation was erroneous.

▮▮▮ Under the Guidelines, a conspirator is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, *that occurred* during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added). Thus, "[a]t sentencing, the defendant is responsible if an act *performed* in furtherance of a conspiracy by a co-conspirator was 'reasonably foreseeable,' regardless of whether the defendant acted to promote it or facilitate it." *United States v. Medina,* 74 F.3d 413, 417 (2d Cir.1996) (emphasis added) (quoting U.S.S.G. § 1B1.3(a)(1)(B)). The government offered no evidence that a firearm was actually possessed in connection with the conspiracy for which Capanelli was convicted. A conspirator cannot be held liable for an action that was intended by a co-conspirator ("reasonably foreseeable" or not) if it did not occur, unless it was within the specifically intended scope of the conspiracy. *See Downing,* 297 F.3d at 65.

The district court's misstatement of the law may not have palpably affected Capanelli's sentence, as the district court made factual findings that could support application of § 2B3.1(b)(2)(C) under the applicable law, correctly applied. The district court found that it was "perfectly clear" that the contemplated conspiracy would involve the use of firearms:

> The contemplated robbery would have taken place, had it occurred, in a building filled with people in a public area, and moreover, in an area where valuable property, such as money, was kept and maintained in consequence of which there were security guards ....
>
> When one contemplates, when one considers what a robbery of considerable amounts of money from this particular place would have involved, in respect of the presence of security guards and other people, it seems perfectly clear that those committing the robbery would have had with them firearms ....
>
> Therefore, it is not the least surprising to find in the transcripts references to

[the fact that] Albanese and Russo will take care of the guns; [an]other indication that guns would be used and were contemplated to be used and were intended to be used.

This finding strongly suggests that the use of firearms was a specifically intended element of the conspiracy. *See Downing,* 297 F.3d at 65; *Medina,* 74 F.3d at 417 (where a conspiracy includes robbing a construction company during working hours, "it is hard to imagine that [the] plan called for the ski-masked co-conspirators to burst into the construction company's offices and shout, 'Give me your money or ... I will think ill of you!' "). Such a finding would be amply supported by the conspirators' recorded conversations, which allow inferences that the conspirators: (i) were able to get firearms; (ii) recognized that the College Point robbery required firearms; (iii) expected and prepared for resistance from security guards within the College Point facility; and (iv) were willing to overcome that resistance with firearms.

Thus, based on the record before us, the district court could have concluded that the use of firearms was a specifically intended element of the conspiracy. However, as the district court was proceeding under an inapplicable legal standard, it never made that finding. Nor do the district court's factual findings compel the inference that the use of firearms was a specifically intended element of the conspiracy.

"Having undertaken review of the guidelines question, which is significant and which can have ramifications in other cases, and having decided that the guidelines application was erroneous, we vacate the sentence[] because we think that the influence of this error is likely to be so pronounced that it could cause resentencing after remand to be unreasonable." *Rubenstein,* 403 F.3d at 101, 2005 WL 730081 at *6, 2005 U.S.App. LEXIS 5156, at *20. On remand, the district court will have an opportunity to consider whether to apply the § 2B3.1(b)(2)(C) enhancement under the appropriate legal framework. *See United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).

### III

■ Capanelli argues that the district court erroneously allowed multiplicitous counts in the indictment. Capanelli concedes, however, that he is now raising this issue for the first time on appeal. We therefore review for plain error, and find none.

■ Finally, the district court did not abuse its discretion in admitting the challenged digital recordings. The government's testimonial evidence was "sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a); *see also United States v. Tropeano,* 252 F.3d 653, 661 (2d Cir. 2001). Moreover, while Capanelli asserts that the original recordings should have been provided, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R.Evid. 1003. The term "duplicate" includes an "electronic re-recording." Fed. R.Evid. 1001(4).

We affirm the conviction and remand to the district court with instructions to vacate the sentence and to conduct resentencing consistent with this opinion and *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and not inconsistent with *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005).