**UNITED STATES of America,
Appellee,**

v.

**Anthony CAPANELLI, Defendant–
Appellant.**

**Docket No. 05–3056–cr.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 14, 2006.

Decided: March 1, 2007.

Donna R. Newman, New York, NY, for Appellant.

Edward C. O'Callaghan, Assistant United States Attorney, (Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief; Robin L. Baker, Assistant United States Attorney, of counsel), for Appellee.

Before: JACOBS, Chief Judge, SACK, Circuit Judge, OBERDORFER, District Judge.*

PER CURIAM.

In April 2005, we affirmed Anthony Capanelli's conviction for conspiring to rob the Employee Federal Credit Union at the New York Times facility in Queens. The evidence at trial showed that Capanelli, a pressman at the facility, was the conspiracy's inside man and supplied his coconspirators with uniforms and a sketch of the facility indicating the location of the money. *See United States v. Savarese*, 404 F.3d 651, 653–54 (2d Cir.2005). However, we vacated Capanelli's sentence and remanded for re-sentencing, both in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and to correct an error in the district court's imposition of a five-level enhancement for brandishing or possessing a firearm pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.1(b)(2)(C). *See Savarese*, 404 F.3d at 654–56. On remand the district court conducted a second sentencing hearing, and ultimately imposed the same fifty-one month sentence. All relevant facts are set forth in *Savarese*, and familiarity with that opinion is assumed.

Capanelli now appeals from the judgment of the United States District Court for the Southern District of New York (Haight, *J.*) entered on June 7, 2005, that reimposed his fifty-one month sentence. He argues that (1) his sentence is procedurally unreasonable because the district court gave too much weight to the guideline range and too little weight to the other factors enumerated in 18 U.S.C. § 3553(a); and (2) the district court erred in applying the § 2B3.1(b)(2)(C) firearm enhancement because there was insufficient evidence that Capanelli specifically intended the possession or brandishing of a firearm. We conclude that the district court's sentence was entirely proper; accordingly, we affirm.

I.

We review a district court's sentence for reasonableness. *Booker*, 543 U.S. at 260–61, 125 S.Ct. 738. A sentence is procedurally reasonable if the district court properly calculated the applicable guideline range, treated the guidelines as advisory, and gave due consideration to the

---

* The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

§ 3553(a) factors. *United States v. Rattoballi*, 452 F.3d 127, 131–32 (2d Cir.2006).[1]

■ Capanelli argues that his sentence is procedurally unreasonable because the district court "failed to appreciate the sea change in sentencing wrought by Booker," and instead "gave complete deference to the guidelines while not giving the other § 3553(a) factors the appropriate weight." Capanelli draws on several statements made by the district court during the sentencing hearing: that the guidelines should be given "significant deference," that the guidelines' "advice has a very distinct resonance about it," and that district courts "are instructed to give significant and substantial deference to the guidelines."

■ The district court's statements do not constitute procedural error. The recommended guideline range "*should* serve as 'a benchmark or a point of reference or departure' " for a sentencing court. *United States v. Fernandez*, 443 F.3d 19, 28 (2d Cir.2006), *cert. denied* — U.S. ——, 127 S.Ct. 192, 166 L.Ed.2d 143 (2006) (emphasis added) (quoting *United States v. Rubenstein*, 403 F.3d 93, 98–99 (2d Cir.2005), *cert. denied* — U.S. ——, 126 S.Ct. 388, 163 L.Ed.2d 173 (2005)). While a district court must consider each § 3553(a) factor in imposing a sentence, the weight given to any single factor "is a matter firmly committed to the discretion of the sentencing judge and is beyond our review." *Id.* at 32. A sentencing judge's decision to place special weight on the recommended guideline range will often be appropriate, because the Sentencing Guidelines reflect the "considered judgment of the Sentencing Commission," *Rattoballi*, 452 F.3d at 133, " 'are the only integration of the multiple [§ 3553(a) ] factors and, with important exceptions, ... were based upon the actual sentences of many judges,' " *id.* (quoting *United States v. Jiménez–Beltre*, 440 F.3d 514, 518 (1st Cir.2006)).

The district court appreciated that the Sentencing Guidelines are advisory. *United States v. Capanelli*, No. 01 Cr. 1121, Sentencing Tr., June 2, 2005 [hereinafter Sentencing Tr.], at 59 ("Although they are no longer binding upon sentencing judges, ... the advice has a very distinct resonance about it."); id. 60 ("[T]hey are advisory, and inherently, conceptually advice can be offered and not acted upon or accepted. . . ."). Additionally, the court considered the other § 3553(a) factors: the nature and circumstances of the offense, *id.* 68 ("[T]he nature and potential circumstances of the offense, which was the objective of the conspiracy, are dreadful."); the history and characteristics of the defendant, *id.* 67 ("A number of people have written to me and said that he was a very fine union man, a good representative and helped other members of the union. Yet this same man was quite prepared to give significant vital assistance to a group of violent people who ... would have placed some of those very same union members and coworkers and employees in grave danger."); the seriousness of the offense, *id.* 68 ("It was a very serious, horrific, potentially life-threatening scheme to which Mr. Capanelli willingly lent himself."); and the other factors, *id.* ("to promote respect for the law; and to provide just punishment for the offense; and to afford adequate deterrence in criminal conduct"; "And having considered all of those factors to the best of my ability ...."). Accordingly, Capanelli's sentence was procedurally reasonable.

---

**1.** A sentence is substantively reasonable if its length is "reasonable in light of the factors outlined in 18 U.S.C. § 3553(a)." *Rattoballi,* 452 F.3d at 132. Capanelli does not challenge substantive reasonableness.

## II.

In Capanelli's first appeal (*Savarese*) we held that "the base offense level for a conspiracy to commit robbery is enhanced ... where it can be established with *reasonable certainty* that the conspirators *specifically intended* that a firearm be brandished or possessed, although it is unnecessary that any brandishing or possession *actually occurred.*" 404 F.3d at 654–55 (emphasis in original). "This sentencing structure accords with the rule that a criminal conspiracy is defined by the conspirators' unlawful agreement." *Id.* at 655.

Reviewing the record then before us, we stated that the district court's findings "strongly suggest[ed] that the use of firearms was a specifically intended element of the conspiracy" and that "the district court could have concluded that the use of firearms was a specifically intended element of the conspiracy." *Id.* at 656 (emphasis added). The evidence at trial permitted the district court to infer "that the conspirators: (i) were able to get firearms; (ii) recognized that the ... robbery required firearms; (iii) expected and prepared for resistance from security guards within the ... facility; and (iv) were willing to overcome that resistance with firearms." *Id.* However, because the district court had been proceeding under an erroneous legal standard, we remanded to allow the district court to "consider whether to apply the § 2B3.1(b)(2)(C) enhancement under the appropriate legal framework." *Id.*

On remand the district court observed that our formulation of the legal standard did not make clear whose intent was relevant for the "specific intent" finding. Accordingly, the district court made two independent findings: (1) that "if any conspirator had [the required] specific intent—and they clearly did—then Mr. Capanelli is bound by it as a member of that conspiracy," Sentencing Tr. 64; and (2) that "Mr. Capanelli as a member of the conspiracy, and as a member fully cognizant of its dimensions and the manner in which it was going to be conducted, had the specific intent that a firearm be brandished or used," *id.* 64–65.

The first finding is premised on an insufficient showing. As the finding is framed, an individual coconspirator's specific intent to possess or brandish a firearm could be attributed to Capanelli even if that intent was unknown to Capanelli, even if the intended action was not an ordinary and natural means to the conspiratorial ends, and (perhaps) even if the intended action was not foreseeable. However (as we noted in *Savarese*), "a criminal conspiracy is defined by the conspirators' unlawful agreement." 404 F.3d at 655. An individual coconspirator's intended action cannot form the basis for an intended offense conduct enhancement if the intent is entertained in private in the mind of a single coconspirator and is not an aspect of a conspiratorial agreement.

■ The second finding is premised on a standard that is too stringent. The conclusion that the defendant himself specifically intended the brandishing or possession of firearms is certainly sufficient for application of the enhancement, but it is not required. "The gist of conspiracy is, of course, agreement." *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir.1989). For conspiratorial liability to attach, the conspirators must have "entered into a joint enterprise with consciousness of its general nature and extent." *Id.* However, general agreement does not necessarily imply agreement on every particular and contingency. The individual conspirators can have incongruent intentions as to particular details or specific goals of the conspiracy, so long as the

coconspirators share a "common purpose" and agree on the "essential nature" of the enterprise. *Id.* at 1191–92 (citing *United States v. Bagaric,* 706 F.2d 42, 63 (2d Cir.1983)).

The *Savarese* instruction therefore focused on the "specifically intended scope of the conspiracy." 404 F.3d at 655; *see also id.* at 656. A § 2B3.1(b)(2)(C) enhancement applied pursuant to § 2X1.1 does not require a finding that the particular defendant specifically intended the brandishing or possession of firearms. Where a defendant is to be punished based on conduct that did not actually occur, it is enough that the defendant was aware that brandishing or possessing firearms was part of the conspiratorial agreement. Absent evidence to the contrary, the court may infer that the conspirators, including the defendant, agreed to use the ordinary, natural, and sufficient means to realize their end. In this case, such means would entail the brandishing or possession of firearms.

Capanelli argues that anything less than a requirement of individualized specific intent amounts to Pinkerton liability. *See* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). We disagree. Under a *Pinkerton* theory of liability, a defendant is liable for the reasonably foreseeable actions of his coconspirators in furtherance of the conspiracy. *See United States v. Bruno,* 383 F.3d 65, 89 (2d Cir.2004). The action need not be (and often is not) a feature of the conspiratorial plan or agreement.

The standard adopted in Savarese requires more: the intended action must be part of the conspiratorial plan for the enhancement to be imposed. However, a defendant's intent that part of the plan be changed (a desire not to use firearms) or a defendant's lack of intent with respect to an aspect of the plan (ambivalence regarding the type of force used) does not alter the intended features of the conspiratorial plan itself. Accordingly, a defendant is liable for those specifically intended features, regardless of his personal intent (or lack thereof). Membership in the conspiracy is sufficient to support the application of an enhancement based on the intended features of the conspiratorial plan.

We affirm the district court's imposition of the § 2B3.1(b)(2)(C) enhancement. The district court found that Capanelli was "fully cognizant" of the conspiratorial plan, and that one aspect of the conspiratorial plan was the possession or brandishing of firearms during the robbery. *Savarese* acknowledged that the evidence could support this conclusion. 404 F.3d at 656. Of course, the district court made the additional finding that Capanelli himself specifically intended that firearms be used. We need not review that finding because it is unnecessary for application of the enhancement. Capanelli conspired to rob the New York Times facility; the possession or brandishing of firearms was an intended feature of the conspiratorial agreement. Accordingly, the district court's application of the § 2B3.1(b)(2)(C) enhancement was proper.

\*     \*     \*     \*     \*     \*

For the reasons set forth above, the judgment of the district court is hereby affirmed.