**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0368n.06
Filed: June 24, 2008

**No. 07-5376**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LUCILLE PITTMAN, by and through her next
friend and Attorney-in-Fact VIOLA P. SYKES,

      Plaintiff,

v.

KAREN FRANKLIN, L.P.N.,

      Defendant-Appellant,

and

KATHY WESSELS, R.N., et al.,

      Defendant-Appellee.

                                /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

**BEFORE:**    **MOORE and CLAY, Circuit Judges; and SCHWARZER, District Judge.**[*]

     **CLAY, Circuit Judge.**   Karen L. Franklin, L.P.N. and Kathy Wessels, R.N. are co-defendants in a diversity suit initiated by Lucille Pittman alleging medical malpractice in violation of Tenn. Code Ann. § 29-26-115. Defendant Franklin appeals from orders entered by the United States District Court for the Western District of Tennessee denying her motion to amend her answer to allege comparative negligence and her motion to set aside the district court's entry of final

---

     [*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

judgment in an order granting summary judgment in favor of co-Defendant Wessels. For the reasons

that follow, we **AFFIRM** the judgment of the district court.

## BACKGROUND

A.      Factual Background

The district court described the factual background of this case as follows:

> Plaintiff[, Lucille Pittman,] a 59-year-old mentally retarded African-American female, is a former patient at Delta Medical Center ("Delta"). Defendant [Karen] Franklin is a licensed practical nurse (L.P.N.) who was responsible for providing nursing care and treatment to Plaintiff at Delta from January 7, 2004 (beginning at 7:00 p.m.), to January 8, 2004 (ending at 7:00 a.m.).
>
> Plaintiff was scheduled for gallbladder surgery and a liver biopsy on January 8, 2004. In preparation for surgery, Plaintiff was given one gram of IV Dilantin. Because the nurses had experienced problems with Plaintiff pulling IVs out of her arm, Nurse Sarah Griffin, R.N. ("Nurse Griffin"), asked Defendant Franklin to console and comfort Plaintiff so that Plaintiff would not pull at the IV access site while Nurse Griffin prepared to administer the IV Delantin. Nurse Griffin administered the IV Dilantin push at 9:50 p.m. on January 7, 2004.
>
> Extravasation[2] of the parenterally[3] administered Dilantin into surrounding tissue can result in severe tissue damage. Therefore, the nursing staff (including Defendant Franklin) is required to closely monitor a patient's IV site during and after the infusion of Dilantin to identify potential risks and prevent injury. The number of times Defendant Franklin checked on Plaintiff's IV site during the night of January 7 and the morning of January 8, along with the extent and sufficiency of Defendant Franklin's observations remains in dispute among the parties. Defendant Franklin testified that she did not perform any substantial assessment or detailed evaluation of Plaintiff's right arm because she saw 'no point' in doing so. Also, Defendant Franklin had very little light during the times that she touched Plaintiff's arm during

---

[2]Extravasation is the passing of fluid (as in bodily fluids or liquid medications) out of a vessel and into the tissues. (J.A. at 190)

[3]To administer the Dilantin parenterally is to administer it in some way other than via the digestive tract, such as by intravenous or intramuscular injection. (J.A. at 190)

2

the night, and she saw no need to 'reassess [Plaintiff's] upper extremities' after Plaintiff went to bed.

Defendant Franklin's care for Plaintiff ended when she went off duty on the morning of January 8, 2004. Nurse Kathy Wessels, R.N. ("Nurse Wessels"), took over Plaintiff's care on the morning of January 8, 2004 at approximately 7:00 a.m. Plaintiff complained of right arm pain on that morning. Nurse Wessels noted that Plaintiff's right arm was swollen and discolored. She further noted that it 'looked like cottage cheese,' and that the pulse in Plaintiff's right arm was 'very weak.'

Plaintiff developed dry gangrene of the first through third digits of the right hand on or about January 13, 2004. She had to undergo a partial amputation of her right arm. Plaintiff's treating physician, Dr. Gregory Vandeven, determined that the Dilantin extravasated into the soft tissues of Plaintiff's right arm, causing vasospasms and ultimately, dry gangrene which necessitated the amputation of Plaintiff's right arm.

(J.A. at 189-91) (internal citations omitted)

### B.    Procedural Background

On December 10, 2004, Pittman, by and through her next friend and power of attorney Viola Sykes, filed a complaint alleging medical malpractice pursuant to Tenn. Code Ann. § 29-26-115 in the United States District Court for the Western District of Tennessee. The complaint named Griffin, Franklin, Wessels and Delta Medical Center, a Tennessee Corporation, as defendants. Pittman sought damages for pain and suffering, medical expenses, loss of capacity for enjoyment of life, and permanent disfigurement. In response, each defendant filed answers contesting liability. None of the defendants, however, asserted an affirmative defense of comparative fault. In an amended complaint, Pittman joined Dr. Mohamad Akbik, Mohamad Akbik, P.C., and Dr. Eugene Vandeven as defendants.

On April 1, 2005, the district court entered a scheduling order establishing the deadline to file amended pleadings on June 30, 2005, expert disclosures on September 1, 2005 and supplemental

disclosures on January 11, 2006. At various points, the district court amended the pre-trial scheduling order upon timely motions from the parties.

After proceeding with initial discovery, Defendants Vandeven, Akbik and Wessels filed motions for summary judgment. On September 23, 2004, Pittman filed a notice of no opposition to Defendant Akbik's motion for summary judgment. As part of this notice, Pittman requested that the order granting summary judgment preclude the remaining Defendants from asserting comparative fault against Akbik. Inasmuch as Defendant Akbik's motion for summary judgment was uncontested, the district court granted Akbik's motion for summary judgment.

On December 2, 2005, two days prior to the deadline to amend pleadings, Pittman filed a motion to amend her complaint, which was granted by the district court. At some point during 2005, Franklin's counsel was unable to contact Franklin regarding developments in the litigation. Nevertheless, the litigation proceeded and on January 4, 2006, Pittman filed a second amended complaint which added a count of negligent hiring and supervision and alleged that Pittman was entitled to punitive damages. Once again, all Defendants filed answers to Pittman's second amended complaint which did not include affirmative defenses of comparative fault. Franklin did, however, move for summary judgment with respect to Pittman's claim for punitive damages, which was denied.[4]

---

[4]Pittman alleged that she was entitled to punitive damages in part because Franklin intentionally neglected her during her treatment at Delta. Pittman based this assertion on the testimony of Franklin's former roommate, Betty King ("King"). King testified that she recalled Franklin "coming in and out talking about having to fight with a woman and reinsert her IV while she was working at Delta." (J.A. at 191) King stated that Franklin "had a problem with blacks," that "she hated them," and that "[Franklin] is a real racist. It's very risky to be black and have [Franklin] taking care of you." (*Id.*)

On March 28, 2006, Pittman filed a notice of no opposition to the motions for summary judgment filed by Defendants Vendeven and Wessels. Once again, Pittman requested that the order granting summary judgment preclude the remaining Defendants from asserting comparative fault against either Vendeven or Wessels. Although the district court granted Defendant Vendeven's motion for summary judgment, it dismissed Wessels' motion as moot.

On March 31, 2006, Pittman filed disclosures of her expert witnesses, including an expert opinion alleging that Wessels and Franklin acted below the standard of care in their treatment of Pittman. Notwithstanding this assignment of fault, Wessels again moved for summary judgment on April 13, 2006. Pittman filed a motion of no opposition and sought to estop the remaining Defendants from asserting comparative fault with respect to Wessels.

On June 16, 2006, after the expiration of the deadline to amend pleadings, Franklin filed a motion to amend her answer to Pittman's second amended complaint to add an affirmative defense of comparative fault against other Defendants, including Wessels. Pittman and Wessels opposed the motion, which was ultimately denied by the district court. Thereafter, the district court granted Wessels' motion for summary judgment and designated it as a final judgment.

On August 9, 2006, Franklin filed a motion for reconsideration regarding both her motion to amend her answer and the district court's grant of summary judgment in favor of Wessels. Once again, the district court denied the motion. Franklin now timely appeals.

## DISCUSSION

I.      **Motion to Amend Answer to Second Amended Complaint**

A.      **Preservation of the Issue**

Franklin alleges that the district court improperly denied her motion to amend her answer made pursuant to Federal Rule of Civil Procedure 15(a). Wessels, however, challenges the propriety of this Court's consideration of the denial of Franklin's motion to amend her answer inasmuch as it was not explicitly referenced in Franklin's notice of appeal. Moreover, Wessels contends that the denial of Franklin's motion to amend is not a final order from which appeal is proper under 28 U.S.C. § 1291. For the reasons that follow, we find that Franklin's challenge is properly raised on appeal.

Following the denial of her motion for reconsideration, Franklin filed a notice of appeal. In particular, the notice of appeal stated:

> Notice is given, pursuant to Fed. R. App. P. 3 & 4, that defendant Karen Franklin, L.P.N., appeals to the United States Circuit Court for the Sixth Circuit from the Order entered by the trial court on August 1, 2006 granting co-Defendant Kathy Wessels' motion for summary judgment, which Order was designated as a final judgment. On March 1, 2007, the trial court denied appellant's motion to reconsider its Order of August 1, 2006. The August 1, 2006 Order (Exhibit A) from which appeal is taken and the March 1, 2007 Order (Exhibit B) are attached for the Court's convenience.

(J.A. at 204)

Pursuant to Federal Rule of Appellate Procedure 3(c), a notice of appeal must "designate the judgment, order or part thereof being appealed . . . ." Fed. R. App. P. 3(c)(1)(B). In order to raise this issue on appeal, therefore, Franklin must provide this Court and the respective parties with proper notice. In the instant case, Franklin has provided such notice.

As an initial matter, we have long held "that an appeal of a final judgment draws into question all prior non-final rulings and orders." *Caudill v. Hollan*, 431 F.3d 900, 904 (6th Cir. 2005) (quoting *McLaurin v. Fisher*, 768 F.2d 98, 101 (6th Cir. 1985)). In *McLaurin v. Fisher*, this Court held that it had jurisdiction to hear a plaintiff's challenge to a district court's dismissal of state law claims and a grant of a motion for a directed verdict despite the fact that the notice of appeal referenced only an order "which embod[ied] the jury's verdict on the federal age discrimination claim." 768 F.2d at 102. The *McLaurin* court concluded that "by appealing from the district court's final order Dr. McLaurin effectively preserved for review all of the district court's non-final rulings and orders . . . ." *Id.*

Similarly, in the case at bar, because Franklin gave proper notice of her intent to appeal from the district court's final order granting summary judgment to Wessels, she preserved the question of the denial of her motion to amend on appeal. Although the denial of a motion to amend an answer is generally a non-final order that is not immediately appealable, it is appealable after the entry of a final order which resolves all issues between the parties. Here, the order of final judgment entered by the district court was a final order which resolved all issues of liability or comparative fault as between Wessels and Franklin. Thus, the generally non-final order of the district court denying Franklin's motion to amend was subsumed in the final, appealable, order granting summary judgment in favor of Wessels. *See Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992) (exercising jurisdiction over challenge to district court's denial of a motion to amend a complaint filed under Rule 15 because a final judgment was rendered by the district court).

Citing *United States v. Universal Management Services*, 191 F.3d 750, 756 (6th Cir. 1999), Wessels argues that the jurisdictional requirements of Fed. R. App. P. 3(c) may not be waived and thus this Court is precluded from reaching the merits of Franklin's motion to amend. *Universal*, however, is inapposite. In *Universal*, the defendants appealed from an order granting summary judgment to the government and denying their motion for summary judgment. *Id.* at 756. Before this Court, however, the defendants also briefed additional issues regarding the denial of their motion for reconsideration in which they argued they were entitled to a new trial because of the malfeasance of their counsel. *Id.* The *Universal* court noted that jurisdiction was improper because "[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal–rather than simply appealing from the entire judgment–only the specified issues may be raised on appeal." *Id.* (quoting *McLaurin*, 768 F.2d at 102); *see also NcNew v. Peoples Bank of Ewing*, 1993 WL 243772, at *5 (6th Cir. 1993) (unpublished). Nevertheless, the *Universal* court went on to address the merits of the issues raised in the motion for reconsideration. *Id.* at 757.

Subsequent panels interpreting *Universal* have read its holding narrowly. In *Caudill v. Hollan*, we did not read *Universal* to mean that jurisdiction was improper whenever a party fails to mention a particular issue. 431 F.3d at 906. Rather, the *Caudill* court noted that *Universal* "stands for a related but different proposition." *Id.* In interpreting *Universal*, the *Caudill* court held that

> our rule is that we will entertain arguments on all objections and asserted errors prior to the final disposition of a case if a party indicates in its notice of appeal that it appeals either the final judgment or final order in the case. We will not, however, absent specific mention in the notice of appeal, entertain issues raised in post-judgment motions if the notice of appeal states only that the appeal is from the final order or the final judgment. To the extent that the post-judgment motions relate to issues raised before judgment, the appellate court will deal with them anyway, as it did in *Universal*.

*Id.* Franklin's appeal falls squarely within the parameters identified by *Caudill*. As noted above, Franklin's notice of appeal indicated that she was appealing from the district court's final order granting summary judgment in favor of Wessels. Therefore, this Court may properly exercise jurisdiction over Franklin's challenge to the district court's denial of her motion to amend at least to the extent that the motion to amend concerned issues as between Franklin and Wessels.

### B. Standard of Review

We review a district court's denial of a motion to amend pleadings made pursuant to Federal Rule of Civil Procedure 15(a) for abuse of discretion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). An abuse of discretion occurs when this Court is "left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the trial court improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank*, 295 F.3d 565, 576-77 (6th Cir.2002) (citations and internal quotation marks omitted).

### C. Analysis

Franklin alleges that the district court erred when it denied her Rule 15(a) motion to amend her answer to Pittman's second amended complaint. We disagree.

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a motion to amend under Rule 15(a), this Court has held that a number of factors should be considered, including "[u]ndue

delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001); *see also Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998); *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). However, "[d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade*, 259 F.3d at 458-59. "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir .1999)).

The district court did not abuse its discretion in denying Franklin's motion to amend her answer to Pittman's second amended complaint. In the instant case, Franklin waited more than seventeen months after the initiation of the malpractice suit before filing a motion to amend her answer and six months after the deadline to amend pleadings. While "undue delay," is not necessarily dispositive regarding the district court's denial of the motion to amend, there are a number of additional factors that support the district court's refusal to exercise its discretion to grant Franklin's motion to amend.

Here, Franklin was on notice regarding Pittman's theory of negligence with respect to all defendants and yet Franklin did not allege an affirmative defense of comparative fault despite having two opportunities to do so. Thus, Franklin repeatedly failed "to cure deficiencies by previous amendments" two times prior to her belated motion to amend her answer.

Moreover, Franklin failed to meet the heightened burden placed on her motion to amend because it was sought at a late stage in the litigation. In fact, in her initial Rule 15(a) motion to the district court, Franklin offered no justification for her failure to amend her answer to include a comparative fault defense at earlier stages in the litigation. Instead, Franklin simply stated why she sought the amendment and quoted language from Rule 15(a) which states that leave to amend "shall be freely given as justice requires." (J.A. at 146) (citing Fed. R. Civ. P. 15(a)).[5]

Lastly, Franklin's motion to amend her answer to include a comparative fault defense, if granted, would have prejudiced Pittman. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971). During the course of the litigation, several Defendants filed motions for summary judgment. In each of the motions for summary judgment, Pittman filed notices of non-opposition and a request to preclude the remaining Defendants from asserting defenses of comparative fault. Pittman's non-opposition was predicated on the fact that none of the remaining defendants, including Franklin, had pleaded comparative fault in their answers to her complaint. Based on this non-opposition, the district court granted the motions for summary judgment. To allow Franklin to assert a comparative fault defense at this stage in the litigation would limit Pittman's ability to establish the full liability of Franklin and the remaining Defendants. Because of the number of factors that militated against the granting of the motion to amend, the district court

---

[5]Similarly, Franklin's total failure to offer any real justification for the delay in amending her answer not only fell far short of her heightened burden but also well below her obligation to demonstrate "good cause" for failing to comply with the district court's scheduling order as required by Rule 16 of the Federal Rules of Civil Procedure. Fed. R. Civ. P 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

did not abuse its discretion in denying Franklin's motion to amend her answer to allege a comparative fault defense.

## II.     Denial of Motion for Reconsideration

### A.     Preservation of the Issue

A ruling denying or granting a motion to reconsider made pursuant to Federal Rule of Civil Procedure 60(b) is appealable under Federal Rule of Appellate Procedure 4(a). *Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cr. 1991) ("The law is settled that a ruling on a Rule 60(b) motion may be appealed under Fed. R. App. P. 4(a)."). Franklin has preserved the issue regarding the district court's denial of her motion for reconsideration–despite not specifically referencing it in her notice to appeal–because it is related to her prior motion to amend and her prior opposition to Wessels' summary judgment motion. *See Caudill*, 431 F.3d at 906 ("To the extent that the post-judgment motions relate to the issues raised before judgment, the appellate court will deal with them anyway . . . .").

### B.     Standard of Review

We review an order denying a motion for reconsideration under Federal Rule of Civil Procedure 60(b) for abuse of discretion. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 569 (6th Cir. 2008). However, when reviewing an order denying a motion for reconsideration, this Court must "not consider the merits of the underlying judgment." *Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001). Consequently, "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Id.*

12

## C.     Analysis

Franklin alleges that the district court abused its discretion when it denied her motion for reconsideration. After the district court denied her motion to amend her answer, Franklin filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 60(b). In her motion for reconsideration, Franklin argued that the motion should be granted because counsel was unable to contact Franklin to obtain authorization to amend the answer to include an allegation of comparative fault, the disclosure of Pittman's expert reports finding that Wessels acted negligently, and that "excusable neglect" prevented her from filing a timely motion to amend. The district court, however, disagreed and refused to reconsider its prior order denying Franklin's motion to amend. Because Franklin did not satisfy the requirements for reconsideration under Rule 60(b), we find that the district court did not abuse its discretion in denying the motion for reconsideration.

Under Rule 60(b) of the Federal Rules of Civil Procedure, a court may relieve a party from a final judgment or order where the party has adequately alleged:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "As a prerequisite to relief under Rule 60(b), a party must establish that the facts of its case are within one of the enumerated reasons contained in Rule 60(b) that warrant relief

from judgment." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 543 (6th Cir. 2004) (quoting *Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir.1993)). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007) (internal citations and quotations omitted).

We find that the district court did not abuse its discretion in denying Franklin's motion for reconsideration inasmuch as Franklin did not establish that reconsideration was warranted under any of Rule 60(b)'s enumerated grounds. As an initial matter, Franklin argues that defense counsel was unable to locate her to gain her input regarding the comparative fault defense after an October 2005 deposition. Franklin argues that defense counsel's inability to contact her was out of counsel's control, and therefore the failure to amend her answer in a more timely fashion constitutes "excusable neglect." This argument is without merit. As noted above, Franklin was available at the outset of the litigation and was on notice of Pittman's negligence theory as to all Defendants. Consequently, Franklin could have included an affirmative defense of comparative fault on the two occasions that she amended her answer to Pittman's complaint.[6] Therefore, the district court did not

---

[6]Moreover, as Wessels notes, the decision to allege comparative fault as an affirmative defense falls within a narrow band of circumstances in which an attorney may act without consulting his or her client, if such a decision is in the best interest of the client and the lawyer is impliedly authorized to so act. *See C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (noting that an "attorney may make tactical decisions without consulting the client" when maintaining his or her obligation "to act solely on behalf of, and for the exclusive benefit of, the client-principal . . ."); ABA Model Rules of Professional Conduct, Rule 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation."). Indeed, it appears that Franklin's counsel was aware of this limited authority when, in her absence, he entered a number of pleadings related to both

abuse its discretion in rejecting Franklin's unavailability as a grounds for granting her Rule 60(b) motion.

Franklin also contends that the district court should have granted her Rule 60(b) motion because she did not have the information with which to form an adequate "comparative fault" defense prior to Pittman's expert witness disclosures. Putting aside the fact that Franklin was on notice regarding Pittman's intent to allege negligence with respect to all Defendants, Franklin's argument is undermined by the fact that she had an opportunity to develop the factual basis for comparative fault with the two expert witnesses retained to aid in her defense, and yet failed to do so. One of Franklin's experts, Dr. Marc Passman, stated in an affidavit that "Franklin fulfilled [her] duties using ordinary and reasonable care" and that the injuries sustained by Pittman "can occur in the absence of negligence . . . ." (J.A. at 135) Another expert, Dr. Donna L. Seger, submitted an affidavit expressing similar views. Franklin's failure to develop evidence that could support a theory of comparative negligence, despite opportunities to do so, does not fall within the scope of "excusable neglect" under Rule 60(b).[7]

In pressing her claim, Franklin essentially argues that equitable considerations counsel in favor of reconsideration of her motion to amend under Rule 60(b). In particular, Franklin argues that

---

liability and damages in the malpractice action. Comparative fault should have been no different.

[7]If Franklin's counsel determined, after initial consultation with experts, that a comparative fault defense was untenable only to change his mind upon disclosure of Pittman's expert reports, such a strategic or tactical determination is outside of Rule 60(b)'s purview. *See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 593 (6th Cir. 2002) (finding that Rule 60(b) relief was unwarranted where party's failure to allege wrongful death claim stemmed from counsel's "strategic miscalculation" or "misinterpretation of the law").

because the district court "liberally" granted other parties extensions of time to file pleadings and other motions before the court, that her motion should have been granted. Franklin, however, does not suggest that the motions for extensions filed by other parties were untimely, as was her motion to amend her answer.[8] Thus, whether the district court allowed parties to amend the scheduling order when presented with timely requests has no bearing on the district court's denial of Franklin's untimely request to amend. Consequently, the equities do not weigh in favor of granting Franklin's Rule 60(b) motion as she contends.

Lastly, Franklin contends that her motion to reconsider should have been granted inasmuch as the addition of a comparative fault defense to her answer would not have prejudiced Pittman. Specifically, Franklin contends that Pittman would not have been prejudiced by her addition of a comparative fault defense presumably because Pittman knew of the findings of her expert witnesses faulting Wessels for her role in Pittman's injuries. We disagree. As an initial matter, Pittman's expert, while finding that Wessels acted below the standard of care, did not find that Wessels was the actual or proximate cause of Pittman's injury as required by Tennessee law. *See* Tenn. Code Ann. § 29-26-115. Because Pittman could not identify Wessels as the proximate cause of her injury, she filed a notice of non-opposition to Wessels' motion for summary judgment. While Pittman did not challenge Wessels' motion for summary judgment, she did seek to estop the remaining

---

[8]Franklin does suggest that Wessels filed an untimely motion to amend her answer to Pittman's second amended complaint "in February 2006, after the December 2005 deadline to amend all pleadings." (Franklin Br. at 21, 24). However, it appears that docket sheet incorrectly lists Wessels' answer to Pittman's second amended complaint as a second amended answer. As Wessels points out, the docket sheet indicates that Wessels filed only one answer to Pittman's second amended complaint and thus, no leave from the court would have been required.

Defendants from asserting comparative fault against Wessels if they had not yet done so. To allow Franklin to amend her answer to include such a defense after Pittman acted in reliance upon the fact that it would not be asserted, would certainly prejudice Pittman and thus, the district court did not abuse its discretion in denying Franklin's Rule 60(b) motion for reconsideration.

## III.     Entry of Summary Judgment as Final Order

### A.     Standard of Review

In her last assignment of error, Franklin challenges the district court's designation of the summary judgment order in favor of Wessels as a final judgment.[9] Inasmuch as Franklin is not challenging the district court's determination regarding summary judgment, but merely its entry of final judgment, this Court reviews this claim of error for abuse of discretion. *Owens Corning v. National Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001) ("[B]ased on [an order of final judgment's] connection to the trial judge's discretion in docket management, and its relationship to the factual details of the parties' conference, abuse of discretion appears to be the appropriate standard.").

---

[9]Franklin, in a footnote, asserts that summary judgment in favor of Wessels should not have been granted because Pittman's expert, Dorothy Cooke, alleged that Wessels violated the standard of care in her treatment of Pittman. Franklin made a similar argument before the district court in her memorandum opposing summary judgment. However, the district court properly granted summary judgment in favor of Wessels inasmuch as Pittman offered no proof that Wessels' negligence was the proximate cause of her injuries. Under Tennessee law, proximate cause is a required element in a medical malpractice cause of action. *See* Tenn. Code Ann. § 29-26-115 ("In a malpractice action, the claimant shall have the burden of proving by evidence [that] . . . [a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred."). Here, Franklin, as the only party opposing Wessels' motion for summary judgment, did not point to any evidence establishing that Wessels was the proximate cause of Pittman's injuries. Thus, the district court properly granted summary judgment in favor of Wessels.

**B.     Analysis**

Franklin challenges the district court's entry of summary judgment in favor of Wessels as a final judgment. Franklin contends that the district court's entry of a final judgment constituted an abuse of discretion because the district court did not recite its reasons for determining that the entry of a final judgment was proper. Franklin alleges that, on the contrary, there were reasons for the entry of summary judgment not to become a final order, particularly her efforts to depose one of Pittman's expert witnesses to develop a comparative fault defense against Wessels. Although we agree that the district court should have set forth its rationale for determining that entry of a final judgment was appropriate, we nevertheless find that the circumstances before the district court warranted the entry of the final judgment.

Under 28 U.S.C. § 1291, this Court has jurisdiction to hear appeals of "all final decisions" rendered by district courts. *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986). Federal Rule of Civil Procedure 54(b)[10] allows a district court to enter a final judgment "on one or more

---

[10]Federal Rule of Civil Procedure 54(b) provides:

(b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief–whether as a claim, counterclaim, crossclaim, or third-party claim–or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

claims, or as to one or more parties, in a multi-claim/multi-party action." *Id.* "Rule 54(b) was enacted as 'a response to the need created by the liberal joinder provisions of the Federal Rules of Civil Procedure to revise what should be treated as a judicial unit for purposes of appellate jurisdiction.'" *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003) (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys.*, 807 F.2d 1279, 1282 (6th Cir. 1986)). "The rule attempts to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of parties." *Solomon*, 782 F.2d at 60.

This Court "has previously indicated that in order to avoid a finding of abuse of discretion in the certification of an issue for appeal pursuant to Rule 54(b), the district court should do more than just recite the Rule 54(b) formula of 'no just reason for delay.'" *Akers*, 338 F.3d at 495 (internal quotations omitted). In *Corrosioneering, Inc. v. Thyssen Envtl Sys.*, this Court established a number of factors that should be considered by a district court when deciding whether to designate an order a final judgment:

> (1) the relationship between the adjudicated claim and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending on the factors of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

807 F.2d at 1287.

In the instant case, the district court granted Wessels' motion for summary judgment based on the "absence of opposition to the motion by Plaintiff, and the entire record in this case . . . ." (J.A.

19

at 162) The motion for summary judgment was granted over Franklin's opposition. The district court reached this conclusion, in part, because Franklin had no basis for opposing the motion inasmuch as the district court previously determined that she could not assert a comparative fault defense against Wessels. Without discussion, the district court designated the grant of summary judgment "as [a] final judgment, there being no reason for delay." (J.A. at 163)

In entering the order granting summary judgment in favor of Wessels as a final judgment, the district court did little "more than just recite the Rule 54(b) formula of 'no just reason for delay.'" *Akers*, 338 F.3d at 495. Although such a terse recitation of the statutory language does not satisfy the district court's obligation to set forth a reasoned basis for entry of a final judgment, we believe that judicial economy would be best served by examining the considerations regarding the applicability of a final judgment to Wessels' motion for summary judgment rather than remanding for further action by the district court.

Applying the *Corrosioneering* factors, we find that the order granting summary judgment in favor of Wessels was properly designated a final judgment. First, the medical malpractice claim brought against Wessels is separate and distinct from the claims against remaining defendants such as Franklin and Griffin, particularly since Franklin was denied the opportunity to allege a comparative fault defense. Second, since we affirm the district court's grant of summary judgment and denial of Franklin's motion to amend her answer, there is no danger that this issue will be brought before this Court a second time. Third, because the district court denied Franklin's motion to amend her answer to assert an affirmative defense of comparative fault against Wessels, there are no pending claims "which could result in set-off against the judgment sought to be made final."

*Corrosioneering*, 807 F.2d at 1287. Lastly, additional factors such as judicial economy and finality counsel in favor of designating the order granting summary judgment as a final judgment inasmuch as it releases Wessels from suit and allows Pittman to move forward with the claims against the remaining defendants. Thus, we affirm the final judgment designation of the district court.

## CONCLUSION

For the reasons described above, we **AFFIRM** the judgment of the district court.