# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 18, 2010          Decided July 8, 2011

No. 09-3138

UNITED STATES OF AMERICA,
APPELLEE

v.

TIJANI AHMED SAANI,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00147)

Lisa H. Schertler argued the cause for appellant. With her on the briefs was Danny C. Onorato.

Kevin R. Gingras, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was Lanny A. Breuer, Assistant Attorney General.

Before: GINSBURG, GRIFFITH, and KAVANAUGH, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, *Circuit Judge*: Tijani Ahmed Saani appeals the sentence he received after pleading guilty to five counts of filing a false tax return, a violation of 26 U.S.C. § 7206(1). Saani argues the district court erred in applying the United States Sentencing Guidelines by increasing his base offense level on the ground he significantly disrupted a governmental function and by denying him credit for acceptance of responsibility. He also argues the district court erred by varying upward from the Guidelines range pursuant to 18 U.S.C. § 3553(a).

We hold the district court did not err by increasing Saani's base offense level because he did significantly disrupt a governmental function, but we are unable to determine whether in denying Saani credit for acceptance of responsibility and varying upward from the Guidelines range, the court relied solely upon constitutionally permissible factors. We therefore vacate Saani's sentence and remand his case for resentencing.

## I. Background

Saani was a contract specialist for the U.S. Air Force at Camp Arifjan in Kuwait. His responsibilities in that position included the award of contracts for the supplies, services, and housing U.S. military personnel need while stationed in Kuwait. In the aggregate, Saani oversaw the expenditure of at least one million dollars annually.[*]

---

[*] The Government alleges Saani oversaw procurement actions totaling $750 million annually, while Saani maintains he had no authority to make purchases over $1 million. Insofar as Saani claims the district court erred in refusing to resolve this dispute, he does so only summarily in a footnote in his opening brief. His argument is therefore forfeit. *See Bryant v. Gates*, 532 F.3d 888,

In 2006 the Government began to investigate allegations of corruption in its contracting offices in Kuwait. That investigation led to the successful prosecution of eighteen individuals, including four Army Majors stationed at Camp Arifjan. The Government also learned that while Saani was in Kuwait he wired $3.6 million to bank accounts around the world, at least $2.6 million of which went to non-U.S. accounts Saani owned or controlled. Indeed, the Government determined that in 2003 through 2006 Saani spent $2,412,731 more than he received from known sources of income, which prompted a review of every contract Saani administered and caused some of them to be "reissued."

The Government subsequently charged Saani with five counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1), one count for each return filed in the five tax years 2003 through 2007. The indictment alleged Saani's returns were fraudulent in three respects: (1) on each return for tax years 2003 through 2007 Saani falsely stated he did not have any interest in or authority over a foreign financial account and, on each return for tax years 2003 through 2006, he (2) failed to report the interest income he earned from the monies in those accounts, and (3) underreported his income. The indictment did not contain any allegation pertaining to the source of the unreported monies in Saani's various accounts.

One day before his pretrial conference was to take place, Saani pleaded guilty to all five counts without having entered

---

898 (D.C. Cir. 2008) (citing *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work" (internal quotation marks omitted))).

into a plea agreement. During the plea colloquy with the district court, Saani's counsel stated:

> [Saani] is willing to plead guilty ... . He is prepared to allocute that for the years 2003, through 2007 ... he filed Federal tax returns [that] were signed under penalties of perjury, and that on those tax returns he stated that he did not have any interest in or signature authority over any foreign bank accounts, and that at the time that he made those statements he knew that those statements were false.

Saani did not then admit (as he did later) he had understated his income, but the Government did not object and the district court accepted Saani's plea.

In its Presentence Report (PSR) the Probation Office calculated Saani had an offense level of 20, reflecting a base offense level of 20 geared to the Government's loss of $816,485 in taxes, a two-point upward adjustment pursuant to U.S.S.G. § 2T1.1(b)(2) for use of sophisticated means to commit a crime, and a two-point downward adjustment pursuant to § 3E1.1 for acceptance of responsibility. His total offense level and lack of a criminal history indicated a sentence of 33 to 41 months in prison. Saani's refusal, upon the advice of counsel, to discuss with the Probation Office matters relating to his net worth and monthly cash flow prevented that office from specifying the size of the fine the court should impose, though it noted Saani did appear to be able to pay a fine.

The Government urged the district court to sentence Saani to at least 121 months in prison. In particular, the Government argued the court should refuse Saani credit for

acceptance of responsibility (leaving his offense level at 20, the base, + 2 for his use of sophisticated means) and should increase Saani's total offense level by ten (to 32) — comprising four levels pursuant to § 5K2.7 for significantly disrupting a governmental function, four levels pursuant to § 5K2.21 for two uncharged offenses (filing a false return for tax year 2002 and making a false statement on an application for a security clearance), and two levels pursuant to § 2T1.1(b)(1) for failing to report income derived from an illegal source. The Government also sought the maximum statutory fine, full restitution, and a special assessment, arguing Saani should not, by refusing to discuss his finances, be able to avoid a monetary sentence.

For his part, Saani urged the district court to accept Probation's conclusion he should receive credit for accepting responsibility: He had pleaded guilty before his pretrial conference — what the district court had called "the point of no return [for] getting acceptance of responsibility credit" — and, at the plea hearing, the Government had expressly stated his allocution was sufficient. Saani also later admitted he had failed to report $2.4 million of income and made a false statement in an application for a security clearance, and conceded he could be required to pay the maximum statutory fine in view of his refusal to cooperate fully with Probation.

At the sentencing hearing the district court adopted most of the Government's proposed increases. The court denied Saani credit for acceptance of responsibility in view of his "unwillingness to be forthcoming with Probation over and above his unwillingness to be more forthcoming about his conduct." The court also increased Saani's base offense level by eight — two levels for use of sophisticated means, four levels for significantly disrupting a governmental function,

and two levels for uncharged conduct, *viz.*, making a false statement in an application for a security clearance.

In Saani's favor, the district court concluded the evidence was insufficient to support a finding he had filed a false tax return for 2002, and it therefore denied the Government's motion for a two-level increase for that uncharged conduct. The court likewise refused to make an upward adjustment for Saani's uncharged failure to report income derived from an illegal source. As a result, the district court assigned Saani a total offense level of 28, for which the Guidelines recommend a sentence in the range of 78 to 97 months in prison.

After hearing argument about the sentencing factors listed in 18 U.S.C. § 3553(a), the court varied upward from the Guidelines range and sentenced Saani to 110 months in prison. The court also sentenced Saani to pay the maximum statutory fine of \$1,632,970,[*] plus a special assessment, and to make full restitution.

## II. Analysis

In reviewing a sentencing decision, we address purely legal questions *de novo*, accept the district court's factual findings unless they are clearly erroneous, and give "due deference" to that court's application of the Guidelines to the facts. *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008) (internal quotation marks omitted); *see also United States v. Bisong*, No. 08-3014, 2011 WL 1900736, at *12 (D.C. Cir. May 20, 2011) (the due deference standard "falls somewhere between *de novo* and clearly erroneous" review

---

[*] By statute the maximum fine is the greater of \$250,000 per count of conviction or, as here, twice the gross pecuniary loss to the victim. *See* 18 U.S.C. § 3571(b), (d).

(internal quotation marks and alteration omitted)). Saani argues the district court erred, first, by increasing his sentence for significantly disrupting a governmental function and, second, by denying him credit for acceptance of responsibility. He also argues the district court erred as a matter of law in denying him credit for accepting responsibility and giving him a sentence above the Guidelines range because, in so doing, the court impermissibly burdened his right against self-incrimination. The Government contends the district court did not clearly err in any respect and did not penalize Saani for his silence.

A. Significant Disruption of a Governmental Function

In ruling from the bench the district court said it would be an "understatement" to describe Saani's actions as having a disruptive effect upon a governmental function. Referring to the "elaborate affidavit" submitted by a government investigator, the district court found Saani's failure to report his income caused the Government to investigate contracts "involving millions and millions" of dollars. In view of the "huge disruptive effect," the district court concluded increasing Saani's offense level by four "was more than warranted." Saani argues the district court clearly erred in applying that provision because (i) it was not his false tax returns that caused the disruption of the contracting offices in Kuwait and, even if it was, (ii) the district court failed adequately to justify the size of the increase.

1. Causation

Saani argues that under § 5K2.7 of the Sentencing Guidelines the Government must establish a direct link between the defendant's misconduct and the alleged disruption by showing, for example, the defendant used

government property or personnel to further his crime. *See, e.g.*, *United States v. Burns*, 893 F.2d 1343, 1347 (D.C. Cir. 1990), *rev'd on other grounds*, 501 U.S. 129 (1991) (affirming increase pursuant to § 5K2.7 where supervisor used "administrative resources" such as "time and personnel" to divert government funds). Here, because there was no misuse of government resources, Saani argues the Government cannot identify any effect his failure to report income had upon the contracting offices in Kuwait. Indeed, as his crime was discovered only after the Government's investigation into allegations of corruption in Kuwait had begun, Saani argues his conduct could not have caused the investigation. Nor, Saani adds, may he be punished under § 5K2.7 for prolonging an investigation that was already under way because the "portion of the investigation that occurred after Saani's tax crimes were discovered was fruitless."

These arguments are not convincing. Although the Government was initially conducting a broader investigation into allegations of corruption in the Kuwaiti contracting office for reasons unrelated to Saani's crimes, it was, according to the affidavit of the government investigator, "Saani's failure to report the existence of his foreign bank accounts [and his actual] income, his pattern of concealment [that] led to further inquiry and scrutiny of his contract actions." It is irrelevant that the ensuing investigation was fruitless. Section 5K2.7 permits a district court to increase the defendant's offense level where "the defendant's conduct resulted in a significant disruption of a governmental function"; it does not require that the disruption be of any particular type or consequence. Unlawful conduct necessitating an unusually burdensome or prolonged investigation of a government office may suffice as a "significant disruption" under § 5K2.7 regardless whether the investigation proves fruitful. *Cf. United States v. Howard*,

No. 95-1443, 1996 WL 30781, at *1 (2d Cir. Jan. 26, 1996) (affirming increase in a defendant's sentence per § 5K2.7 where defendant's theft of evidence caused several federal agencies to undertake a sprawling investigation). As a result of Saani's conduct the Government was forced to review contracts involving millions of dollars. This task was so complex that the investigative team required the assistance of two senior officials at the Kuwaiti contracting office, who had to be diverted from their ordinary duties. The district court did not err clearly in finding that Saani's conduct significantly disrupted a governmental function.

### 2. Magnitude of the Increase

Saani argues the district court also erred by failing to explain why his conduct warranted an increase of four levels instead of some lesser number. The district court found the disruptive effect of Saani's conduct was "huge" and particularly harmful because it disrupted the Government's functioning during a time of war. Saani did not ask at his hearing for a more elaborate explanation and the district court's failure to provide one sua sponte was not so plain an error — if it was an error at all — that "the trial judge and [the] prosecutor were derelict in countenancing it." *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)); *see also United States v. Tann*, 532 F.3d 868, 872 (D.C. Cir. 2008) ("[o]rdinarily an objection not made in the district court is reviewable on appeal only for plain error").

### B. Acceptance of Responsibility

Saani next argues the district court should have reduced by two his base offense level because he "clearly demonstrate[d] acceptance of responsibility for his offense."

U.S.S.G. § 3E1.1(a). As noted in the Sentencing Guidelines, the district court is in a "unique position to evaluate a defendant's acceptance of responsibility." § 3E1.1, cmt n.5. Its decision to grant or deny credit pursuant to § 3E1.1 is therefore "entitled to great deference on review." *United States v. Berkeley*, 567 F.3d 703, 711 (D.C. Cir. 2009) (citing § 3E1.1 cmt n.5). As detailed below, none of Saani's objections pertaining to his plea colloquy or his interaction with the Probation Office undercuts the deference we owe the district court. Because the court may have erred as a matter of law, however, by penalizing Saani for invoking his right to remain silent about certain matters beyond the offense of conviction, we remand his case to the district court for further consideration as we explain below.

1. Timeliness of the Plea

Saani first argues the decision to deny him credit under § 3E1.1 should not stand because the district court failed to acknowledge the timeliness of his plea. He points out that at a status hearing the judge said if he pleaded guilty prior to the date of the pretrial conference, then he should have "no problem" getting credit under § 3E1.1. Thus, Saani argues, the court "essentially promised [him] that a plea by the deadline *would result* in a § 3E1.1 adjustment."

Saani's contention fails because a "defendant who enters a guilty plea is not entitled to an adjustment under [§ 3E1.1] as a matter of right," § 3E1.1 cmt n.3; indeed, the timeliness of a defendant's plea is only one of eight factors the Guidelines suggest a court may consider, *id.* cmt n.1. Here, the district judge did not mention the timing of Saani's plea, but did point to reasons for believing Saani had not in fact accepted responsibility — his failure at the plea hearing to admit he had underreported income and his refusal later to

cooperate fully with Probation. Those are adequate reasons for denying him credit. A dozen years ago we rejected explicitly Saani's implicit suggestion to the contrary. *See United States v. Bridges*, 175 F.3d 1062, 1067 (D.C. Cir. 1999) ("We see no reason, and have no warrant, to overturn the district court simply because it did not go through the exercise of explaining the rejection of choices implicit in the choice it did make").

2. Scope of the Allocution

Saani next argues the district court should not have considered his failure at the plea colloquy to admit all of the allegations against him because doing so penalized him unfairly for a decision made by his counsel. More particularly, defense counsel told the court Saani admitted he had failed to report his interest in foreign bank accounts, but Saani's allocution did not address the allegations he had underreported his income. According to Saani, it was not recalcitrance on his part that led him to allocute so narrowly. Rather, he claims, "The record demonstrates that defense counsel had incomplete data from the government at the time of [his] plea" and counsel "advised [him] to permit her to evaluate the government's data before agreeing to [the amount of the tax loss in the Government's proffer]."

When determining eligibility for an adjustment under § 3E1.1, a district court may require the defendant "to provide a candid and full unraveling of the circumstances surrounding the offense of conviction," *In re Sealed Case*, 350 F.3d 113, 123 (D.C. Cir. 2003) (internal quotation marks omitted), and may consider whether the defendant truthfully admitted, or instead falsely denied or frivolously contested, any "additional relevant conduct for which the defendant is accountable," § 3E1.1 cmt n.1. Where, as here, a defendant is

accused of making multiple false statements in his tax return, those alleged false statements are obviously "relevant conduct for which the defendant is accountable." The district court did not, therefore, err by taking into account Saani's failure to admit he underreported his income regardless whether he was acting upon the advice of counsel; a defendant is responsible for the strategic decisions of his attorney. *See Comm'r v. Banks*, 543 U.S. 426, 436 (2005) ("the attorney can make tactical decisions without consulting the client" because "[e]ven where the attorney exercises independent judgment without supervision by, or consultation with, the client, the attorney, as an agent, is obligated to act solely on behalf of ... the client-principal"); *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 427 n.6 (6th Cir. 2008) (an attorney may act without consulting her client in tactical matters "if [the] decision is in the best interest of the client and the lawyer is impliedly authorized to so act"); *cf. United States v. Morrison*, 98 F.3d 619, 626 n.8 (D.C. Cir. 1996) (lawyer's failure to seek the client's opinion before making a strategic decision does not render that decision "incompetent or inappropriate"). And there can be no question defense counsel's decision to limit the scope of Saani's allocution was in fact strategic.[*]

---

[*] At his sentencing hearing, Saani's counsel stated:

> We [] delayed our acceptance on the unreported income and tax computations because the discovery in this case has really been an ongoing process. ... We continue[d] to receive financial records and the Government's computations [of the claimed tax loss] well past the plea, and I wanted the opportunity to look at the Government's computations ... before I felt comfortable that the Government's particular figures were supported.

13

### 3. Cooperation with Probation

Saani also argues the district court ought not to have considered his refusal to speak candidly with Probation about his finances when deciding whether to give him credit under § 3E1.1 because he had conceded at the sentencing hearing that he was able to pay a fine. Ability to pay is not, however, the only legitimate reason for expecting a defendant to disclose the location and amount of the income he failed to report on his tax returns. To the contrary, such details are a part of the "candid and full unraveling" a court may expect a defendant convicted of tax evasion to supply in assessing whether the defendant has accepted responsibility for his crime, *In re Sealed Case*, 350 F.3d at 123; *see* § 3E1.1 cmt n.1(A), and, as a practical matter, may be the essential detail if the Government is to recover the lost taxes.[**]

---

Defense counsel thereby made clear that instead of increasing the likelihood Saani would receive credit under § 3E1.1 by providing the Government with information about the extent of his crime — a task undoubtedly easier for Saani than it was for the prosecution, which had to rely upon the cooperation of foreign governments pursuant to Mutual Legal Assistance Treaties — she believed Saani would be better off by putting the Government to its proof.

[**] Saani argues he had a constitutional privilege to remain silent about the source of his unreported income because disclosing that source could subject him to punishment for a crime other than tax evasion. In arguing the district court erred by considering his failure to cooperate with Probation, however, Saani does not here argue the locational information requested by Probation might subject him to any greater punishment. *Cf. United States v. Bolden*, 479 F.3d 455, 466 (6th Cir. 2007) ("it is not ... clear whether there are Fifth Amendment implications of requiring [a defendant] to disclose the location of ... stolen money [when] such disclosure

4.  Fifth Amendment Concerns

Finally, with respect to the denial of credit under § 3E1.1, Saani argues the district court erred as a matter of law insofar as it relied upon his unwillingness to discuss matters about which he had a Fifth Amendment privilege not to speak, *see* U.S. CONST. amend. V (no person "shall be compelled in any criminal case to be a witness against himself"). Specifically, Saani argues the district court refused to give him credit for acceptance of responsibility because he did not cooperate with the Government's bribery investigation by identifying the source of his unreported funds. The Government contests Saani's reading of the record but, like the Supreme Court, "express[es] no view" on the constitutional issue, *see Mitchell v. United States*, 526 U.S. 314, 330 (1999) (holding Fifth Amendment extends to sentencing phase of criminal proceeding but reserving question whether silence bears upon credit for accepting responsibility).

Recall that in deciding whether a defendant should receive credit for acceptance of responsibility, it is appropriate for the district court to consider whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or [did] not falsely deny[] any additional relevant conduct for which the defendant is accountable." § 3E1.1 cmt n.1(A). In order to avoid a potential violation of the defendant's constitutional right against self-incrimination, however, the Commentary further provides:

would not increase the penalty to which [the defendant] was already subject by pleading guilty to the underlying robbery").

> [A] defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under [§ 3E1.1] ... [and] may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction.

*Id.*; *see also United States v. Hicks*, 978 F.2d 722, 726 (D.C. Cir. 1992) (revision to § 3E1.1 and accompanying application note was intended to prevent tension between the Guideline and the Fifth Amendment).

We considered this Commentary in a slightly different context *In re Sealed Case*. There the defendant had been convicted of, among other things, conspiracy to distribute cocaine. 350 F.3d at 115. The district court denied the defendant credit under § 3E1.1 in part because he refused to disclose the identity of his supplier and co-conspirator. *Id.* at 122. Because the Guidelines "vest a sentencing court with the latitude to consider all reliable, probative indicia tending to demonstrate, or countervail, the genuineness" of the defendant's remorse, *id.*, we held a sentencing court may require a defendant seeking credit pursuant to § 3E1.1 "to provide a candid and full unraveling of the circumstances" of his offense, including the names of his co-conspirators, *id.* at 123 (internal quotation marks omitted).

If a defendant convicted of distributing drugs can be denied credit for failing to reveal the source of his drugs, then does it follow that Saani may be denied credit for failing to reveal the source of his unreported income? We are not certain the analogy holds. The defendant *In re Sealed Case* stood convicted of conspiracy and naming his supplier would not have subjected him to the possibility of prosecution for an

additional crime; one who has conspired necessarily has co-conspirators. Saani, however, asserts that if he were forced to disclose the source of his funds, then he might face prosecution for a crime distinct from tax evasion, *viz*., bribery. Courts disagree whether the "compulsion" a defendant faces if he may be denied a reduction of his sentence unless he provides potentially incriminating information is sufficiently forceful to trigger the protection of the Fifth Amendment. *Compare United States v. Frazier*, 971 F.2d 1076, 1084, 1086 (4th Cir. 1992) (conditioning a reduction under § 3E1.1 "on the waiver of [a defendant's] Fifth Amendment right is [] analogous to (and constitutionally indistinguishable from) the choice confronting the defendants in [a] plea bargain case[] ... [it] may *encourage* defendants to provide information that could prove incriminatory, but it does not *compel* them to do so"); *with United States v. Olivares*, 905 F.2d 623, 628 (2d Cir. 1990) (requiring defendant "to accept responsibility for crimes other than those to which he has pled guilty ... in effect forces [him] to choose between incriminating [himself] ... or forfeiting [a] substantial reduction[]" in his sentence); *United States v. Amico*, 486 F.3d 764, 779 (2d Cir. 2007) (same in dictum); *see also United States v. Cohen*, 171 F.3d 796, 805 (3d Cir. 1999) (a majority of circuits "construe denied 3E1.1 reductions as 'denied benefits' rather than 'penalties'").

We do not now resolve the constitutional issue because we cannot determine from the present record whether the district court did indeed take into account Saani's refusal to disclose specifically the source of his funds when it denied him credit under § 3E1.1. *See* Tr. of Sentencing Hearing at 4, *United States v. Saani*, No. 08-147 (D.D.C. Dec. 10, 2009) (denying Saani credit because of his "unwillingness to be forthcoming with Probation over and above his unwillingness to be more forthcoming about his conduct here"). Instead, we vacate Saani's sentence so the district court may clarify the

basis or bases for, and if necessary reconsider, its conclusion Saani did not accept responsibility for his crimes. *See Saro*, 24 F.3d at 287 ("For most constitutional errors, an appellate court is to reverse if it entertains a 'reasonable doubt' about whether the error affected the outcome below"). If the district court does not consider Saani's refusal to disclose the source of the funds in deciding whether to grant or deny him credit under § 3E1.1, then there will be no Fifth Amendment issue with respect to that provision.[*]

C. Upward Variance

After assigning Saani a total offense level of 28, for which the Guidelines range is 78 to 97 months in prison, the district court varied upward and sentenced Saani to 110 months. Saani argues the variance violated his right against self-incrimination because it was, like the denial of credit pursuant to § 3E1.1, based upon his refusal to disclose the source of his unreported income.

We agree with Saani that portions of the record can be read to suggest the district court varied upward, in part, because Saani refused to disclose the source of his funds. It is

---

[*] At the sentencing hearing the district judge stated the Guidelines calculations in Saani's case "wouldn't matter" because he believed a sentence of 110 months was appropriate. Based upon that statement, the Government argues any error the district court may have committed in calculating Saani's Guidelines range was harmless; the district court "would have imposed the same sentence in any event" and that sentence, irrespective of the Guidelines, "was "independently justified by the § 3553(a) factors." The Government's argument fails because, as we explain below, there is an open question whether the sentence imposed under § 3553(a) was tainted by constitutional error.

clear the Fifth Amendment protects a defendant not only from being compelled to provide information about guilt or innocence but also from being compelled to provide details about conduct beyond the offense of conviction that could increase the severity of his punishment. *See Mitchell*, 526 U.S. at 325–30 (privilege against self-incrimination extends through sentencing phase of criminal trial; "defendant [is often] less concerned with the proof of her guilt or innocence than with the severity of her punishment"); *cf. id.* at 340 (Scalia, J., dissenting) (noting Court does not address whether judge may draw negative inference from defendant's silence at sentencing hearing when considering "repentance, character, and future dangerousness"); *United States v. Kennedy*, 499 F.3d 547, 552 (6th Cir. 2007) (Fifth Amendment does not forbid district court from considering "defendant's refusal to [undergo psychological examination] in assessing what sentence is necessary to protect the public from further crimes" (internal quotation marks omitted)).

It is not evident a constitutional violation occurred here, however, because the record makes clear that, in addition to concern about the source of Saani's income, the decision to vary upward was based upon the need to deter tax evasion by persons entrusted with the expenditure of federal funds. If the decision of the district court to vary upward rested solely upon the latter ground, then it would be not only constitutional but also a reasonable exercise of the district court's considerable discretion. Still, out of an abundance of caution — and having decided on another ground to vacate Saani's sentence and remand his case to the district court for reconsideration — we think it prudent to have the district

court also clarify on remand its reason or reasons for varying upward from the Guidelines, should it again do so.[*]

D.  Remand to a Different Judge

Saani maintains that because the district judge made certain statements at his sentencing hearing expressing impatience or disagreement with the Guidelines, the judge will be unable to take a "fresh look" at his sentence on remand and we should therefore direct that his case be reassigned to a different judge.  *See* 28 U.S.C. § 2106 (appellate court may "require such further proceedings to be had as may be just under the circumstances"); *see also United States v. Wolff*, 127 F.3d 84, 88 (D.C. Cir. 1997) (whether a case should be reassigned depends upon "whether the original judge would ... have substantial difficulty in putting out of his or her mind the previously-expressed views ... [and] whether reassignment is advisable to preserve the appearance of justice" (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir. 1977))).  In view of the considerable time and effort the district judge in this case spent soliciting and considering both the parties' arguments, it is evident that irrespective of his personal views regarding the wisdom of the Guidelines, the

---

[*] We also point out that in view of the district court's refusal to increase Saani's base offense level pursuant to § 2T1.1(b)(1) for failing to report funds obtained from an illegal source, it would seem anomalous for the district court later to find the evidence was sufficient to sustain an upward variance under § 3553(a) for the same ostensibly unlawful conduct.  *Cf. United States v. Lawson*, 494 F.3d 1046, 1056 (D.C. Cir. 2007) ("it is permissible for a sentencing court to build a sentence, at least in part, on conduct [outside the offense of conviction] provided, as here, the court determined by a preponderance of the evidence that [the defendant] engaged in the conduct").

district judge knew he was bound by law to consider them. There is nothing in the record to suggest the district judge on remand will be unable or unwilling to do so again.

## III. Conclusion

The district court did not err in concluding Saani's offense level should be increased pursuant to U.S.S.G. § 5K2.7 because Saani's criminal conduct significantly disrupted a governmental function. We vacate Saani's sentence and remand his case to the district court for resentencing solely because the record is unclear as to whether an arguably improper consideration infected the district court's decisions to deny Saani credit for accepting responsibility pursuant to U.S.S.G. § 3E1.1 and to vary upward from the Guidelines sentencing range pursuant to 18 U.S.C. § 3553(a).

*So ordered.*