08-4883-cr
United States v. Julio Oliveras

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 8th day of January, two thousand and ten.

Present:     GUIDO CALABRESI,
             ROSEMARY S. POOLER,
                      Circuit Judges,
             LAWRENCE E. KAHN,[*]
                      District Judge.

_____

United States
                                    Appellant,

          -v-                                      No. 08-4883-cr

Julio Oliveras,

                           Defendant-Appellee.
_____

Appearing for Appellant:          JEFFREY A. BROWN, Assistant United States Attorney, of
                                  counsel to Lev L. Dassin, Acting United States Attorney for

_____

[*]Lawrence E. Kahn, of the United States District Court for the Northern District of New York, sitting by designation.

the Southern District of New York (Jonathan S. Kolodner on the brief)

Appearing for Appellee:             PATRICK J. JOYCE, New York, NY

Appeal from the United States District Court for the Southern District of New York (Deborah A. Batts, Judge). **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said district court be and it hereby is **VACATED** and the case is **REMANDED** to the district court with instructions.

Defendant pleaded guilty to conspiring to sell more than 5 grams of crack, in violation of 21 U.S.C. § 841. Although the district court purported to accept defendant's plea, it declined to sentence him pursuant to Section 841(b)(1)(B). The government appeals. We assume the parties familiarity with the facts.

Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). We review for procedural issues first, typically engaging in substantive review only if the sentence is found to be procedurally reasonable. Gall v. United States, 552 U.S. 38, 49-51 (2007). A district court "commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, [] treats the Guidelines as mandatory[,] . . . does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." Cavera, 550 F.3d at 189 (internal citations omitted); see also Gall, 552 U.S. at 51.

In the present case, the district court manifestly erred in sentencing defendant to a term below the statutory minimum. As the Supreme Court has explained, "the scope of judicial discretion with respect to a sentence is subject to congressional control." Mistretta v. United States, 488 U.S. 361, 364 (1989); see also United States v. Sharpley, 399 F.3d 123, 127 (2d Cir. 2005). Accordingly, district courts generally lack the authority to impose a sentence below the statutory minimum. See Kimbrough v. United States, 552 U.S. 85, 108 (2007); see also United States v. Billings, 546 F.3d 472, 474 n.1 (7th Cir. 2008).[1]

---

[1] A district court may sentence a defendant below the statutory minimum in two circumstances: (1) where the defendant provided substantial assistance and the government moved to release the defendant from the statutory minimum under 18 U.S.C. § 3553(e), and (2) where the so-called "safety-valve" exception applies. See 18 U.S.C. § 3553(f). In the present case, the government did not move for a reduction below the statutory minimum pursuant to Section 3553(e), and defendant did not qualify for safety valve consideration pursuant to Section 3553(f).

Defendant argues that Section 841(b)(1)(B) was not relevant because the district court found that he had conspired to distribute powder, not crack. This misses the point: the district court was not at liberty to make findings that were contrary to defendant's admissions in his plea allocution. See United States v. Gonzalez, 420 F.3d 111, 133-34 (2d Cir. 2005) (holding that drug type and quantity are not sentencing factors determinable by the judge, but rather are elements that must be pleaded and proved to a jury or admitted by a defendant). The indictment charged defendant with "distribut[ing] and possess[ing] with intent to distribute a controlled substance, to wit, five grams and more of ... cocaine base, in a form commonly known as 'crack,' in violation of Sections 812, 841(a)(1), and 841(b)(1)(B)." Defendant admitted to committing the offense outlined in the indictment, and the district court accepted defendant's plea. 21 U.S.C. § 841(b)(1)(B)(iii) provides that for controlled substance violations involving 5 grams or more of crack, the defendant "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." Having accepted defendant's plea, the district court was bound by the mandatory sentencing provisions. It was manifestly procedural error for the court to conclude that, because defendant intended to commit a non-Section 841(b)(1)(B) offense, he could be sentenced as if he pleaded to a non-841(b)(1)(B) offense. See Gonzalez, 420 F.3d at 134.

The district court also erred in miscalculating defendant's guidelines range. "[D]istrict courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6; Nelson v. United States, 555 U.S. ___, 129 S. Ct. 890 (2009) (per curiam) (holding that a judge does not have to give a sentence within the applicable guidelines range but does have to calculate that range and start the sentencing analysis from there). Here, although the district court adopted the factual recitations contained in the presentence report, it calculated defendant's base offense level as 14 based on the assumption that he sold powder rather than crack. Specifically, the court said that the fact that the government's confidential informant insisted on buying crack when defendant initially wanted to sell powder was "so disturbing that the Court will calculate the appropriate guideline offense level using a drug quantity of 37 grams of powder cocaine and not crack cocaine."[2]

Construed as a finding that defendant actually sold powder as opposed to crack, the remark quoted in the previous paragraph would be clearly erroneous. (Again, it is undisputed that the substance that defendant sold was crack.) Construed as a finding that the guidelines overstate the severity of defendant's conduct, the remark evidences procedural error. The court was required first to calculate defendant's guidelines range, and then decide if a guidelines sentence would be reasonable. Assuming sentencing factor manipulation is a viable basis for imposing a non-guidelines sentence — an issue we address below — the district court collapsed these questions. The court's failure to properly calculate defendant's offense level requires us to remand. See Gall, 552 U.S. at 51; United States v. Salim, 549 F.3d 67, 72 (2d Cir. 2008).

---

[2] In fact, defendant sold 31.7 grams of cocaine, not 37 grams.

The court also erred in its calculation of defendant's criminal history category. Again, the proper course is to first calculate a defendant's guidelines range and then decide whether a sentence within that range is reasonable. The career offender guideline, USSG § 4B1.1, provides that a career offender's criminal history category "in every case under this subsection shall be Category VI." The court admitted that "[t]here is no question that the defendant does qualify technically for a career offender enhancement." Nevertheless, the court found that the career offender guidelines overstated his criminal history because (1) defendant played a minor role in his prior offenses, (2) the government overreached in orchestrating the sting, and (3) defendant had not reoffended between 2001 and 2005.

The government interprets the district court as having granted defendant a two level downward departure pursuant to USSG § 4A1.3.[3] It is far from clear from the sentencing transcript that this is what the court intended. For one thing, the court never mentions Section 4A1.3. Additionally, the court failed to comply with the requirements of that Section in at least two respects: first, it did not specify the basis for its departure in writing, contrary to Section 4A1.3(c)(2); second, it granted defendant a two category reduction, in spite of the fact Section 4A1.3(b)(3)(A) permits only a one category reduction.

Assuming the court did intend to grant a Section 4A1.3 departure, there are at least four potential issues that should be considered on remand. First, although the court appeared to grant the departure on the basis of the government's alleged misconduct, this is not one of the factors that we have recognized as a basis for departure. See United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001) (holding that departure factors include (1) the amount of narcotics involved in prior offenses, (2) the defendant's role in those offenses, (3) the sentences previously imposed on the defendant, and (4) the amount of time previously served compared with the applicable sentence that placement in Criminal History Category would yield). Second, the court's finding that defendant had attempted to reform is at best dubious in light of the fact that he was convicted of engaging in an ongoing conspiracy to distribute cocaine in a separate case during this same period. Third, the court failed to address the government's argument that defendant's criminal history — which includes multiple criminal sentences of increasing length — shows that a below-guidelines sentence would not provide adequate deterrence. Fourth, the court's finding that defendant's prior qualifying convictions were insufficiently serious to justify sentencing him as a career offender was not sufficiently supported by the record.

---

[3] Speaking of this as a "departure" is a bit misleading. "Once the proper range has been determined, rather than thinking in terms of 'departures' and 'enhancements,' the court should simply decide whether to impose a sentence within the range or outside it, by reference to the factors set forth in 18 U.S.C. § 3553(a)." United States v. Calimlim, 538 F.3d 706, 718 (7th Cir. 2008) (Wood, J.). Nevertheless, the relevant guideline provision, USSG § 4A1.3(b), speaks of "downward departures," and nothing much hangs on continuing to use this phrase so long as we recognize it as a relic of the pre-Booker regime.

Another issue to be further developed on remand is whether the government's alleged misconduct in this case justifies the imposition of a below-guidelines sentence. Although the district court did not utter the words "sentencing factor manipulation" or "sentencing entrapment" during the sentencing hearing, the government plausibly suggests that the court invoked these doctrines as a basis for lowering defendant's sentence.[4] Sentencing factor manipulation "has been described as occurring when the Government engages in improper conduct that has the effect of increasing the defendant's sentence." United States v. Caban, 173 F.3d 89, 93 n.1 (2d Cir. 1999). Sentencing entrapment, by contrast, "requires that a defendant convince the fact-finder that government agents induced her to commit an offense that she was not otherwise predisposed to commit." United States v. Knecht, 55 F.3d 54, 57 (2d Cir. 1995) (internal quotation marks omitted); see also United States v. Garcia, 79 F.3d 74, 75 (7th Cir. 1996).

Although the Second Circuit has never formally recognized the validity of either of these doctrines, various panels have suggested that a departure based on manipulation or entrapment might lie where the government engages in "outrageous" conduct. Compare United States v. Gagliardi, 506 F.3d 140, 148-49 (2d Cir. 2007) ("[T]his Court has not yet recognized the doctrine of sentencing manipulation . . . . It has, however, suggested that if a departure based on sentencing manipulation were valid, it would likely require a showing of outrageous government conduct.") (internal quotation marks omitted), with United States v. Gomez, 103 F.3d 249, 256 (2d Cir. 1997) ("[T]he validity of the concept of sentencing entrapment has not been determined in this Circuit, but . . . even where it has been approved in theory, its potential application has been limited to outrageous official conduct which overcomes the [defendant's] will.") (internal citations and quotation marks omitted).[5] We have elsewhere described consideration of such

---

[4] Again, what the court said was "[t]he fact that the confidential source is the one who upped the ante ... is disturbing, so disturbing that the Court will calculate the appropriate guidelines offense level using a drug quantity of 37 grams of powder."

[5] Our sister Circuits have adopted widely different positions on the availability of the sentencing manipulation and sentencing entrapment doctrines. The Eighth and Tenth Circuits recognize the validity of both doctrines. See United States v. Torres, 563 F.3d 731, 734 (8th Cir. 2009) (sentencing manipulation); United States v. Martin, 583 F.3d 1068, 1073 (8th Cir. 2009) (sentencing entrapment); United States v. Eads, 191 F.3d 1206, 1212 (10th Cir. 1999).

By contrast, the D.C. Circuit has strongly suggested that it would not recognize either doctrine. United States v. Hinds, 329 F.3d 184, 188 (D.C. Cir. 2003).

The Seventh and Ninth Circuits recognize sentencing entrapment, but not sentencing manipulation. See United States v. Turner, 569 F.3d 637, 640-41 (7th Cir. 2009); United States v. Baker, 63 F.3d 1478, 1500 (9th Cir. 1995).

The First and Eleventh Circuits take the opposite approach, recognizing the sentencing manipulation doctrine, but not sentencing entrapment. See United States v. Rizzo, 121 F.3d 794, 801 (1st Cir. 1997); United States v. Ciszcowski, 492 F.3d 1264, 1270 (11th Cir. 2007). (Of

wrongful government conduct, perhaps more aptly, under the rubric of imperfect entrapment. <u>See</u> <u>United States v. Bala</u>, 236 F.3d 87, 91-93 (2d Cir. 2000).

Based on this record, it would be premature to address whether a below-guidelines sentence would be appropriate in this case. Should the district court on remand continue to incline toward imposing a below-guidelines sentence based on the government's alleged misconduct, the court should, at the very least, make a full record of all the evidence that the government manipulated defendant's sentence — including the corroborating evidence of the plea allocutions of the co-defendants — and explicitly consider whether this record indicates sufficiently "aggressive encouragement of wrongdoing," <u>id.</u> at 92, to justify a below-guidelines sentence.

The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____

---

course, sentencing entrapment appears to be a particular kind of sentencing manipulation. Thus, the recognition of the broader doctrine obviates the need to recognize the narrower one.)

Finally, the Third, Fourth, Fifth, and Sixth Circuits have not taken a position on either doctrine. <u>United States v. Tykarsky</u>, 446 F.3d 458, 477 n.13 (3d Cir. 2006); <u>United States v. Jones</u>, 18 F.3d 1145, 1154 (4th Cir. 1994); <u>United States v. Tremelling</u>, 43 F.3d 148, 151 (5th Cir. 1995); <u>United States v. Watkins</u>, 179 F.3d 489, 503 n.14 (6th Cir. 1999).