# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 18, 2016        Decided June 10, 2016

No. 13-3096

UNITED STATES OF AMERICA,
APPELLEE

v.

DARIUS MCKEEVER,
APPELLANT

Consolidated with 13-3105, 13-3109

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cr-00109-3)
(No. 1:13-cr-00109-2)
(No. 1:13-cr-00109-1)

*Robert S. Becker* and *Carmen D. Hernandez*, both appointed by the court, argued the causes for appellants. With them on the joint briefs was *Dennis M. Hart*, appointed by the court.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: PILLARD and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Detectives from the Metropolitan Police Narcotics & Special Investigations Division arrested Darius McKeever, Darnell Wallace, Trevor Hopkins ("Appellants"), and co-defendant Kenneth Benny-Dean on April 4, 2013, in a reverse sting operation, and charged them with conspiracy to interfere with commerce by robbing a liquor store in violation of the Hobbs Act, 18 U.S.C. § 1951. A Federal Grand Jury returned a single-count indictment on April 9, 2013. Appellants Wallace and McKeever entered guilty pleas to the indictment on August 1, 2013. Appellant Hopkins pleaded guilty to the indictment on September 12, 2013. On October 9, 2013, the District Court sentenced Wallace to a term of imprisonment of 65 months, supervised release of 36 months, and a special assessment of $100. Wallace noted this timely appeal on October 28, 2013. Also on October 9, 2013, the District Court sentenced McKeever to a term of imprisonment of 84 months, supervised release of 36 months, and a special assessment of $100. McKeever noted this timely appeal on October 14, 2013. On December 12, 2013, the District Court sentenced Hopkins to a term of imprisonment of 80 months, supervised release of 36 months, and a special assessment of $100. Hopkins noted this timely appeal on December 27, 2013. Co-defendant Benny-Dean went to trial and was acquitted by a jury on October 23, 2013.

Appellants, together, argue that undercover police officers instigated the use of firearms in the reverse sting operation leading to their arrest. According to Appellants, the

police brought a pistol and assault rifle to a meeting at which the robbery was being planned by Appellants and the undercover officers, and for a few minutes the officers placed those weapons in Hopkins' and Wallace's hands. Br. of Appellants at 13. None of the Appellants was carrying a weapon of his own. Appellants were arrested during the meeting without any robbery actually taking place. In light of these circumstances, Appellants have raised the following issues on appeal.

**First**, Appellants argue that, because none of them "possessed firearms in furtherance of the criminal agreement," the District Court erred when it "enhanced each Appellant's sentence 5 levels pursuant to U.S.S.G. §§ 2X1.1 and 2B3.1(b)(2)." *Id.* **Second**, Appellants claim that "they are entitled to [a] remand for resentencing because [the District Court] failed to consider whether police introduction of firearms into the conspiracy was sentenc[ing] entrapment." *Id.* **Third**, Appellant Hopkins raises a number of contentions, *inter alia*, that the District Court lacked subject matter jurisdiction over the case, *id.* at 36-38; that "[t]he District Court erred in conducting a Rule 11 plea inquiry that failed to establish that [he] knew his actions would have an interstate impact or that he had any reason to believe the conspiracy was one that satisfied the elements of the Hobbs Act," *id.* at 13-14; and that the District Court "erred in failing to establish during the Rule 11 inquiry that Hopkins agreed with anyone other than the undercover officers to engage in the conduct which constituted the conspiracy," *id.* at 14.

We reject Appellants' challenge to the firearm enhancement. We agree with the Government that "[t]he district court did not err in applying a five-level enhancement under U.S.S.G. § 2B3.1(b)(2) for possession of a firearm. Actual possession of a firearm is not a prerequisite to

application of the enhancement for inchoate offenses, such as the robbery conspiracy in this case, and the record amply supports the district court's finding that appellants intended that firearms would be possessed during the robbery and that such possession was reasonably foreseeable." Br. for Appellee at 19-20. We therefore affirm the judgment of the District Court on this point.

We agree with Appellants that the case must be remanded to allow the District Court to address whether the alleged police introduction of firearms into the conspiracy was sentencing entrapment. The Government contends that, because Appellants did not properly raise sentencing entrapment with the District Court, the court was not required to address the matter. *Id.* at 20. The issue is not as simple as the Government suggests. At worst, Appellants Wallace and McKeever were not as clear as they might have been in raising with the District Court their claims that they were entitled to downward variances in their sentences because they were victims of sentencing entrapment. The record also suggests that the trial judge had an inkling of the issue, but never addressed it. And there is no doubt that Appellant Hopkins expressly raised an argument for mitigation based on sentencing entrapment, but the trial judge never considered his request. Moreover, in its brief to this court, the Government not only appears to acknowledge that Hopkins raised the issue with the District Court, but goes on to concede that, "[t]o the extent that this Court finds that Hopkins sufficiently asserted a sentencing manipulation argument below, we agree that discussion of the point would have been in order." *Id.*

In circumstances such as these, when we cannot discern the District Court's disposition of the sentencing entrapment issue, justice will be best served if we remand the case to

afford the trial judge an opportunity to address the issue in the first instance. *See United States v. Saani*, 650 F.3d 761, 771-72 (D.C. Cir. 2011) (remanding the case "for resentencing solely because the record [wa]s unclear as to whether an arguably improper consideration infected the district court's decisions to deny [appellant] credit for accepting responsibility pursuant to U.S.S.G. § 3E1.1 and to vary upward from the Guidelines sentencing range pursuant to 18 U.S.C. § 3553(a)"); *United States v. Williams*, 951 F.2d 1287, 1291 (D.C. Cir. 1991) (explaining that an appellate court has the inherent authority to remand the record when it is unable to determine the basis for the District Court's actions).

Finally, we find no merit in Appellant Hopkins' other challenges. We therefore affirm the judgment of the District Court with respect to the various claims raised by Appellant Hopkins.

## I. BACKGROUND

In January 2013, the Metropolitan Police Department received information that Appellant Hopkins had been released from jail and was seeking to purchase a large quantity of narcotics. Hoping to waylay Hopkins, Officer Miguel Rodriguez-Gil, acting in an undercover capacity, reached out to Hopkins and arranged to meet. Rodriguez-Gil and several other undercover officers met with Hopkins and Appellant Wallace on January 23 to discuss a potential drug deal. It quickly became apparent, however, that Hopkins and Wallace did not have the money necessary to purchase the quantity of drugs that the officers had available to sell.

Rodriguez-Gil decided to switch tactics and asked Hopkins and Wallace if they would be interested in committing a robbery. Rodriguez-Gil explained that a certain

individual owed him money for narcotics, and that Hopkins and Wallace could help get the money back. Hopkins and Wallace responded enthusiastically.

The officers met several times with Hopkins in March to discuss the details of the planned robbery. At one of these meetings, Hopkins introduced the officers to Appellant McKeever, who actively contributed to the meeting's discussion. As part of that discussion, Rodriguez-Gil asked Hopkins and McKeever "what kind of weapons would they want," and suggested that the officers could bring firearms. In response, Hopkins indicated that Appellants could also bring firearms. Hopkins later informed the officers that he had obtained the firearms, and that "his team" was ready.

Sometime on or near April 4, 2013, the officers and Appellants discussed that the robbery was to be of a liquor store; Appellants were led to believe that the owner of the liquor store was to be the victim of the robbery scheme. The plan, as understood by the Appellants, was that they would rob the liquor store. At one point in the planning, Rodriguez-Gil showed Hopkins a photograph of the store.

On April 4, 2013, the three Appellants, along with Benny-Dean, arrived together at a loading dock in front of a storage facility to make final preparations for the robbery. Rodriguez-Gil arrived in an undercover vehicle. Hopkins and Wallace entered Rodriguez-Gil's vehicle, and Rodriguez-Gil handed each man a firearm to inspect. Hopkins indicated that McKeever was supposed to have brought firearms as well, but, in the rush, had left them behind. As a result, none of the Appellants had a firearm of his own.

Rodriguez-Gil, several other undercover officers, the Appellants, and Benny-Dean then entered the storage facility.

The officers led the men to a room within the facility that had been set up with audio and video equipment. In that room, the group discussed the layout of the liquor store and how the robbery would proceed. Each Appellant participated: Wallace stated that he would bring one of Rodriguez-Gil's firearms to the store. McKeever inquired as to whether the store was fitted with an alarm system. And Hopkins mentioned that he could get the store owner to give up the money by applying a curling iron to the owner's groin. Following these discussions, an Emergency Response Team entered the room and arrested Appellants and Benny-Dean.

As noted above, Appellants and Benny-Dean were indicted for conspiracy to interfere with interstate commerce by robbery, pursuant to the Hobbs Act, 18 U.S.C. § 1951. Appellants each pled guilty before the District Court. Benny-Dean proceeded to trial and was acquitted by a jury.

The District Court then sentenced Appellants to the terms noted above. Wallace and McKeever were sentenced on October 9, 2013, at a joint sentencing hearing, while Hopkins was sentenced on December 12, 2013, at a separate hearing. At each hearing, the District Court determined the sentencing range suggested by the U.S. Sentencing Commission Guidelines Manual ("Guidelines") then in effect. The District Court applied § 2X1.1, the Conspiracy Guideline. Following § 2X1.1's instructions, the District Court utilized the base offense level and adjustments set forth in § 2B3.1, the Robbery Guideline. One such adjustment was § 2B3.1(b)(2)(C) (the "Gun Bump"), pursuant to which a defendant's sentence may be enhanced "if a firearm was brandished or possessed" in the commission of the offense. The District Court explained that this adjustment was appropriate because Appellants had each been aware that the intended robbery was to involve firearms. The District Court

concluded the hearings by sentencing each Appellant to the low end of the Guidelines range applicable to him.

Appellants now appeal their sentences. They contend that the District Court should not have applied the Gun Bump in calculating their Guidelines ranges. They also argue that the District Court failed to consider the requisite statutory factors set forth in 18 U.S.C. § 3553(a), in light of Appellants' objections that the police officers had engaged in sentencing entrapment by allegedly introducing firearms into the conspiracy for the purpose of enhancing Appellants' sentences.

Appellant Hopkins raises numerous additional challenges to his conviction and sentence. Hopkins argues that the District Court lacked subject matter jurisdiction; that the officers' conduct violated Due Process; that his guilty plea was invalid because there was no factual basis for the plea and he did not understand the nature of his offense; that his sentence was unreasonable because the District Court failed to consider mitigating circumstances and because his criminal history category had been miscalculated; and, finally, that his counsel was constitutionally defective in failing to properly investigate his criminal history and alert the District Court to the alleged miscalculation.

## II. ANALYSIS

### A. Standards of Review

"In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court declared the Sentencing Guidelines to be advisory only and instructed appellate courts to review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). After *Booker*, our review of

sentencing challenges that have been properly preserved is for abuse of discretion under a two-step analysis." *United States v. Locke*, 664 F.3d 353, 356 (D.C. Cir. 2011) (citations omitted); *see also Gall v. United States*, 552 U.S. 38, 51 (2007).

At the first step, we "ensure that the district court committed no significant procedural error," such as "improperly calculating[] the Guidelines range, . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. "We review purely legal questions de novo and factual findings for clear error, and we give 'due deference' to the district court's application of the Guidelines to facts. At the second step, we consider the substantive reasonableness of the sentences in light of the totality of the circumstances, reversing only if we conclude that the district court abused its discretion." *United States v. Jones*, 744 F.3d 1362, 1366 (D.C. Cir. 2014) (quoting *United States v. Henry*, 557 F.3d 642, 645 (D.C. Cir. 2009)).

In the discussion below, we refer to the Guidelines in effect at the time Appellants were sentenced. 18 U.S.C. § 3553(a)(4)(A)(ii) (directing courts to generally use the Guidelines "in effect on the date the defendant is sentenced"). For Wallace and McKeever, the 2012 Guidelines apply; for Hopkins, the 2013 Guidelines apply. These two versions of the Guidelines are substantially the same.

## B. The Gun Bump

The Sentencing Guidelines specify a five-level enhancement for a conspiracy to commit robbery if it is established "with reasonable certainty" that the conspirators intended to possess or brandish a firearm during the crime.

*See* Guidelines §§ 2B3.1(b)(2)(C) (five-level enhancement warranted if firearm brandished or possessed during robbery); 2X1.1(a) (for inchoate offense, base offense level is to be determined "from the guideline for the substantive offense, plus any enhancements from such guideline for any intended offense conduct that can be established with reasonable certainty"). Appellants argue that the District Court erred in applying this so-called "Gun Bump" enhancement to their sentences.

Appellants first contend that "§ 2B3.1(b)(2) applies to a defendant's actual conduct, not intended conduct, and because § 2B3.1 explicitly covers conspiracy to commit a Hobbs Act robbery, § 2X1.1 does not apply." Br. of Appellants at 13. In support of this position, Appellants cite *United States v. Campa*, 529 F.3d 980, 1014 (11th Cir. 2008); *United States v. Van Boom*, 961 F.2d 145, 146-47 (9th Cir. 1992); and *United States v. Williams*, 891 F.2d 962, 965 (1st Cir. 1989). *Id.* at 31 n.14.

The Government argues that Appellants' position rests on a misguided reading of the Sentencing Guidelines:

[T]he Guidelines [direct] that, "[i]f the offense involved a conspiracy, attempt or solicitation, refer to § 2X1.1 (Attempt, Solicitation, or Conspiracy) as well as the guideline referenced in the Statutory Index for the substantive offense." U.S.S.G. § 1B1.2(a). Section 2X1.1(c) even more specifically directs that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." U.S.S.G. § 2X1.1(c). Section 2B3.1, the guideline for robbery, is not included in the list of sections that expressly covers conspiracies. Therefore, the guidelines direct courts to apply § 2X1.1 in

determining a defendant's sentence for conspiracy to commit robbery.

Br. for Appellee at 30-31 (third and fourth alterations in original).

In support of its position, the Government cites *United States v. Gonzales*, 642 F.3d 504, 505 (5th Cir. 2011) (per curiam); *United States v. Mershon*, 322 F. App'x 232, 236 (3d Cir. 2009); *United States v. Martinez*, 342 F.3d 1203, 1205 (10th Cir. 2003) (citing *United States v. Bolden*, 132 F.3d 1353, 1357 (10th Cir. 1997)); *United States v. Joost*, No. 95-2031, 1996 WL 480215, at *11-12 (1st Cir. Aug. 7, 1996); and *United States v. Amato*, 46 F.3d 1255, 1259-61 (2d Cir. 1995). The Government also suggests that the First Circuit no longer follows *Williams*, 891 F.2d 962, a case cited by Appellants; instead, it now applies § 2X1.1 to conspiracies under the Hobbs Act. Br. of Appellee at 31 n.22 (citing *Joost*, 1996 WL 480215, at *12). The Government additionally points out that "the Eleventh Circuit case cited by appellants based its holding on *United States v. Skowronski*, 968 F.2d 242, 250 (2d Cir. 1992), a Second Circuit decision that was later overruled in *Amato*. *See United States v. Thomas*, 8 F.3d 1552, 1564-65 (11th Cir. 1993)." *Id.* at 32 n.22.

We think that the Government has the better of this argument. "We start with the text and structure of the Guidelines." *United States v. Chatman*, 986 F.2d 1446, 1450 (D.C. Cir. 1993). Section 1B1.1 directs the sentencing court to begin by determining the applicable guideline section pursuant to § 1B1.2. Guidelines § 1B1.1(a)(1). Section 1B1.2 instructs the court to "[r]efer to the Statutory Index (Appendix A) to determine the Chapter Two offense guideline." *Id.* § 1B1.2(a). As Appellants point out, the Statutory Index lists "2B3.1" for the Hobbs Act, but does not list § 2X1.1. *Id.*

at Appendix A. However, the next sentence in § 1B1.2 expressly states: "*If the offense involved a conspiracy, attempt, or solicitation, refer to § 2X1.1 . . . .*" *Id.* § 1B1.2(a) (emphasis added). This language indicates that § 2X1.1 is the proper section to which the court should generally look in determining sentences for conspiracy crimes with respect to which there are no specific guidelines, like here. *See Martinez*, 342 F.3d at 1206.

Section 2X1.1(c) states that "[w]hen an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." Guidelines § 2X1.1(c). The Commentary to § 2X1.1 provides that "Offense guidelines that expressly cover conspiracies include:" – and then lists 19 guideline sections that involve conspiracies. *Id.* § 2X1.1 Application Note 1 (for example, § 2A1.5 ("Conspiracy or Solicitation to Commit Murder")). Section 2B3.1 is not among the sections listed, nor does § 2B3.1 expressly cover conspiracies. Therefore, it appears plain that, for a Hobbs Act robbery conspiracy, a sentencing court should apply § 2X1.1 and not § 2B3.1. *See Martinez*, 342 F.3d at 1206 (noting that § 2B3.1 does not expressly cover attempted robbery).

Appellants argue that the term "expressly" in § 2X1.1(c) refers to the underlying statute, not to the guideline section. In Appellants' view, because statutes like the Hobbs Act expressly mention conspiracies, a court should apply the guideline section listed in the Statutory Index (which, for a Hobbs Act robbery, is § 2B3.1). *See United States v. Hernandez-Franco*, 189 F.3d 1151, 1158-59 (9th Cir. 1999); *Thomas*, 8 F.3d at 1564-65. We reject this view, however, because it is contrary to the text of § 2X1.1(c), "which speaks specifically in terms of relevant guideline sections and not underlying statutes." *Martinez*, 342 F.3d at 1207; *see also*

Guidelines § 2X1.1(c) ("expressly covered by another offense *guideline* section" (emphasis added)). The text of the Guidelines nowhere suggests that the language of the underlying statute should be considered.

Appellants also point out that one of the aforementioned guideline sections listed in the Commentary to § 2X1.1 – § 2H1.1 – does not expressly mention the word "conspiracy." Thus, according to Appellants, § 2X1.1(c) does not require that the conspiracy be "expressly covered by another offense guideline section," even though that is what the text of § 2X1.1(c) says. Guidelines § 2X1.1(c). Appellants are correct that the word "conspiracy" does not appear in § 2H1.1. However, this fact is not a reason to ignore the plain text of the Guidelines. *Stinson v. United States*, 508 U.S. 36, 38 (1993) (Commentary is not authoritative if inconsistent with the Guidelines' plain text). Moreover, § 2H1.1 appears to be structured to include conspiracies: it directs courts to consider "the offense level from the offense guideline applicable to any underlying offense," Guidelines § 2H1.1(a)(1), and the Commentary to § 2H1.1 mentions "conspiracy," *id.* at § 2H1.1 Application Note 1. In other words, we find no merit in Appellants' position.

Finally, in their Reply Brief, Appellants belatedly attack the Government's reliance on *Amato*, 46 F.3d 1255. Reply Br. of Appellants at 9-12. In *Amato*, the court distinguished *Skowronski*, 968 F.2d at 250, an earlier decision from the Second Circuit that had applied § 2B3.1 to a Hobbs Act conspiracy. *Amato*, 46 F.3d at 1261. The *Amato* court explained:

> When *Skowronski* was decided, § 2E1.5 of the Guidelines expressly referred Hobbs Act violations to . . . § 2B3.1 . . . . That provision, however, was deleted from the

Guidelines. USSC App. C, amend. 481 (Nov. 1993). . . . Now that there is no longer a provision of guidelines directing Hobbs Act conspiracies to § 2B3.1, they are covered by the conspiracy guideline, § 2X1.1.

*Id.* (citing *Skowronski*, 968 F.2d at 250). Appellants argue that the 1993 amendment was not intended "to apply § 2X1.1 to Hobbs Act robbery conspiracies," but rather "to make the Guidelines more manageable and consistent." Reply Br. of Appellants at 11-12. It is noteworthy that Appellants' argument rests on an assumption that the former § 2E1.5, entitled "Hobbs Act Extortion or Robbery," covered Hobbs Act conspiracies. Guidelines § 2E1.5 (1992). They are mistaken in their assumption. Furthermore, as our discussion above makes clear, our disposition of the "gun bump" issue rests on the text and structure of the Guidelines, not on the analysis in *Amato*. Therefore, we do not find Appellants' argument to be compelling. In any event, Appellants failed to preserve this argument, so we need not address it here. *MBI Grp., Inc. v. Credit Foncier Du Cameroun*, 616 F.3d 568, 575 (D.C. Cir. 2010) (noting that, in general, arguments made for the first time in reply briefs are forfeited).

Appellants additionally contend that "the mere fact that [they] . . . discussed using guns in the robbery [is] insufficient" to justify a Gun Bump enhancement in sentencing. Br. of Appellants at 21. According to Appellants, a Gun Bump enhancement can only apply if Appellants *actually possessed* firearms, not if they simply agreed to bring firearms to a robbery. *Id.* at 22, 32. Appellants' position is mistaken.

Section 2X1.1(a) directs courts to apply "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any *intended*

offense conduct that can be established with reasonable certainty." Guidelines § 2X1.1(a) (emphasis added). The Commentary to § 2X1.1 further illustrates:

> [T]he ... specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred. . . . For example, if two defendants are arrested during the conspiratorial stage of planning an armed bank robbery, the offense level . . . . would . . . reflect the level applicable to robbery . . . with the *enhancement for possession of a weapon.*

*Id.* § 2X1.1 Application Note 2 (emphasis added).

The Commentary makes quite clear that actual possession is not required for the Gun Bump to apply. *See Stinson*, 508 U.S. at 38 (Guidelines Commentary is generally authoritative). And, as the District Court noted, each Appellant need not intend to *personally* possess a firearm. Rather, "it is enough that the defendant was aware that brandishing or possessing firearms was part of the conspiratorial agreement." *United States v. Capanelli*, 479 F.3d 163, 167 (2d Cir. 2007) (per curiam); *see also* Guidelines § 1B1.3(a)(1)(B) (offense conduct includes "all reasonably foreseeable acts and omissions *of others* in furtherance of the jointly undertaken criminal activity" (emphasis added)). The District Court did not err in interpreting § 2X1.1.

Finally, Appellants contend that the District Court erred in finding that each Appellant was aware that the robbery would involve firearms. In making this finding, the District Court credited the testimony of Rodriguez-Gil, who appeared at the sentencing hearing that was held for Wallace and

McKeever on October 9, 2013. Appellants assert that "Rodriguez-Gil's testimony about Appellants' discussions regarding firearms is incredible" because it is allegedly inconsistent and "devoid of details." Br. of Appellants at 19. This is a groundless argument, and it certainly does not support Appellants' contention that the District Court's finding was clearly erroneous.

In sum, we have no basis upon which to overturn the District Court's application of the Gun Bump enhancement to Appellants' sentences.

## C. Sentencing Entrapment

"Before *United States v. Booker*, 543 U.S. 220 (2005), rendered the U.S. Sentencing Guidelines advisory, we forbade district courts from relying on sentencing [entrapment] as a basis for mitigation. *See United States v. Walls*, 70 F.3d 1323, 1329–30 (D.C. Cir. 1995). But *Booker* and its offspring fundamentally changed the sentencing calculus, requiring courts to now consider any mitigation argument related to the sentencing factors contained in 18 U.S.C. § 3553(a) when imposing a sentence within the statutory range of punishment." *United States v. Bigley*, 786 F.3d 11, 12 (D.C. Cir. 2015) (per curiam). The law of the circuit is now clear that a defendant may raise a mitigation argument resting on sentencing entrapment to request a downward variance in his sentence. And "[w]hen a district court confronts a nonfrivolous argument for a sentence below the relevant guideline range, it must consider it." *Id.* at 14 (citing *Locke*, 664 F.3d at 357).

The theory of sentencing entrapment is "that if the government induces a defendant to commit a more serious crime when he was predisposed to commit a less serious

offense, the defendant should be sentenced only for the lesser offense." *Walls*, 70 F.3d at 1329. "The main element in any entrapment defense is . . . the defendant's 'predisposition'— 'whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime.'" *Id.* (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

Appellants claim that they requested variances to account for the police introduction of the guns into the conspiracy to trigger the 5-level enhancement. Br. of Appellants at 32-34. However, according to Appellants, the District Court "never evaluated the [requisite] statutory [§ 3553(a)] factors" to address their sentencing entrapment claims. *Id.* at 34.

The Government's response is perplexing. On the one hand, the Government argues that Appellants Wallace and McKeever never "argued that, once the district court applied the gun enhancement, it should consider the fact that the weapons were supplied by undercover officers when determining the appropriate sentence under 18 U.S.C. § 3553(a)." Br. for Appellee at 36. However, the Government acknowledges that Appellant "Hopkins argued for a 'modicum of mitigation' because the undercover officers supplied the firearms that triggered the gun enhancement." *Id.* The Government then tellingly concedes that

> [i]f this Court finds that Hopkins adequately raised a sentencing manipulation argument for mitigation before the district court, we agree that discussion of the point would have been in order pursuant to *Bigley*, 786 F.3d at 16 (finding plain error where district court failed to consider defendant's nonfrivoulous mitigation argument).

*Id.* at 36 n.23. The Government also tellingly acknowledges that, with respect to all three Appellants, the trial judge apparently was aware of the sentencing entrapment issue:

> Although such discussion did not occur at Hopkins's sentencing hearing on December 12, 2013, the record demonstrates that the district court was aware that the firearms were supplied by undercover officers and, in determining the appropriate sentences in this case, the district court considered that the offense was "created by the police."

*Id.* (quoting Tr. of Joint Sentencing Hearing at 135 (Oct. 9, 2013), Supplemental Appendix ("S.A.") 228). The Government also appears to concede that "the record as a whole demonstrates that the judge considered [the sentencing manipulation] argument and nonetheless considered a guidelines sentence appropriate." *Id.* at 37 n. 23.

Our review of the record reveals that Appellants Wallace and McKeever did not explicitly raise "sentencing entrapment" with the District Court. However, as the Government notes, the District Court appeared to understand that sentencing entrapment was an issue. Appellant Hopkins, on the other hand, did raise the issue. Nevertheless, the District Court's statements leave it unclear what the court meant to do with the sentencing entrapment issue.

Appellants were sentenced *before* the decision in *Bigley* was issued. During this time – *i.e.*, post-*Booker*, but pre-*Bigley* – there may have been confusion as to whether this circuit's pre-*Booker* case law on sentencing entrapment remained in effect. *See Bigley*, 786 F.3d at 16 (district court "may have thought it was prohibited, as a matter of law, from considering" sentencing entrapment); *United States v.*

19

*Oliveras*, 359 F. App'x 257, 261 n.5 (2d Cir. 2010) ("[T]he D.C. Circuit has strongly suggested that it would not recognize [the sentencing entrapment] doctrine."); *United States v. Beltran*, 571 F.3d 1013, 1019 n.1 (10th Cir. 2009) ("The Sixth and D.C. Circuits categorically reject the doctrine of sentencing [entrapment] . . . ."). The Government does not dispute Appellants' assertion that confusion over the state of the law existed at the time of their sentencing.

During their joint sentencing hearing, it appears that Appellants Wallace and McKeever may have attempted to raise sentencing entrapment as a mitigation argument. The matter, however, is far from clear. In his sentencing memorandum, Appellant Wallace generally requested "a variance to account for all the mitigating circumstances of the case." Wallace's Sentencing Memorandum at 14, Joint Appendix ("J.A.") 59. Then, at the sentencing hearing, Wallace's counsel made arguments that referenced the fact that the officers were the ones who brought firearms to the scene:

> At that point when they first arrived there and they go into the storage – and they go into the car, into the officer's car, and there's a show of the guns . . . . An undercover officer gives you a gun, what are you supposed to – what are you supposed to do?

Tr. of Joint Sentencing Hearing at 97, 102, S.A. 191, 196.

McKeever's counsel similarly made statements intended to distance his client from the police officers' firearms. *Id.* at 108, S.A. 202 ("McKeever doesn't bring a weapon on April 4th, and there's no evidence that anyone else did . . . ."). The statements by McKeever's counsel were undoubtedly vague, so they prove very little. And McKeever, unlike Wallace, did

not request a variance in his sentencing memorandum. We note, however, that Wallace and McKeever were sentenced at a *joint* hearing. And at oral argument, Wallace's counsel noted that she and McKeever's counsel had purposefully tried to avoid repeating themselves because the District Court was accepting one counsel's argument to apply to both parties. Recording of Oral Argument at 15:24-43; *see also United States v. Pardo*, 636 F.2d 535, 541 (D.C. Cir. 1980) ("[I]n certain situations, it may be redundant and inefficient to require each defendant in a joint trial to stand up individually and make every objection to preserve each error for appeal."); *United States v. Love*, 472 F.2d 490, 496 (5th Cir. 1973) (permitting defendant to rely upon a co-defendant's argument where failure to do so would cause a "miscarriage of justice").

In addition – as the Government points out – the trial judge, when addressing Wallace, made statements suggesting that that she may have been aware of the sentencing entrapment issue:

> You know, *I understand that this is created by the police*, I clearly understand, and it's for that reason, coupled with the fact that obviously you can't exercise very sensible judgment, but that's not an excuse for a crime. But I'm going to sentence consistent with the low end of the guidelines.

Tr. of Joint Sentencing Hearing at 135, S.A. 229 (emphasis added). The Government argues that the trial court's decision to "sentence consistent with the low end of the guidelines," *id.*, "demonstrates that the judge considered [the sentencing entrapment] argument and nonetheless considered a guidelines sentence appropriate." Br. of Appellee at 37 n. 23. Neither the Government nor this court is in a position to confirm this assertion on the current record.

The record with respect to Appellants Wallace and McKeever is a muddle and, thus, gives us no coherent grounds for resolving the sentencing entrapment issue. So far as we can tell, no one is really at fault here. The law was in flux, the Appellants were imprecise in advancing their claims, and it is unclear whether the District Court meant to reject Appellants' requests for sentence variances or whether it simply failed to address the issue. In these circumstances, we will not search for error when we have at hand a simple solution that will better serve the ends of justice. As we noted at the outset of this opinion, when the sentencing record from the trial court is unclear, it is within the authority of the appellate court to remand the case to afford the trial judge an opportunity to address the issue in the first instance. *See United States v. Saani*, 650 F.3d at 771-72. We will therefore remand the sentencing entrapment claims raised by Appellants Wallace and McKeever.

We will also remand the matter relating to Appellant Hopkins because he clearly raised sentencing entrapment with the District Court. In his sentencing memorandum, Hopkins' counsel argued that "the Court should grant a variance to account for all the mitigating circumstances of the case." Hopkins' Sentencing Memorandum at 10, J.A. 98. Then, at Hopkins' sentencing hearing, counsel amplified, as follows:

> [T]he other significant thing in this case, it smells of . . . . Entrapment . . . . For that reason – although he is guilty . . . . there should be a modicum of mitigation in the sentence . . . . I mean, these were people who . . . couldn't even get guns to commit the robbery. The police had to bring those to the table. And of course, they brought them to the table knowing that that would result in a greatly enhanced sentence . . . . So all that being said . . . this is a

case . . . warrant[ing] a downward departure based solely on the Court's discretion to impose a sentence that is not [in]sufficient but not more than necessary.

Tr. of Hopkins' Sentencing Hearing at 9-11 (Dec. 12, 2013), S.A. 259-61. There is no question as to what Hopkins' counsel was seeking on behalf of his client. Yet, the District Court never expressly addressed the issue.

The trial court was aware that police had brought the firearms. *Id.* at 13-14, S.A. 263-64 ("Admittedly, [Appellants] did not actually bring the firearms. The police did, or the undercovers."). And the court indicated that it wanted to sentence Hopkins in the same manner that it was sentencing the other Appellants. *Id.* at 17, S.A. 267 ("I'm trying to be sort of fair and compare what I've done with the other people, considering your role here. I'm going to sentence [Hopkins] on Count 1 to [the low end of the Guidelines.]"). Unfortunately, we are unable to discern what the trial judge meant to say about sentencing entrapment. Therefore, the case must be remanded. *See Locke*, 664 F.3d at 357 (making it clear that the District Court must adequately explain the chosen sentence); *Saani*, 650 F.3d at 771-72 ("remand[ing] [defendant's] case to the district court for resentencing solely because the record [wa]s unclear as to" what the district court had relied upon in issuing defendant's sentence).

### D. Hopkins' Remaining Arguments

Appellant Hopkins raises multiple additional arguments, both in Appellants' joint brief as well as in a supplemental *pro se* brief. None of these arguments was raised before the District Court. Therefore, unless otherwise indicated below, we review these claims under the plain error standard. FED R. CRIM. P. 51(b), 52(b); *see Molina-Martinez v. United States*,

136 S. Ct. 1338, 1343 (2016) (explaining the elements of plain error review). We find no merit in these claims.

## 1. Manufactured Jurisdiction

The Hobbs Act "punish[es] interference with interstate commerce by extortion, robbery or physical violence." *Stirone v. United States*, 361 U.S. 212, 215 (1960) (citing 18 U.S.C. § 1951(a)). Appellant Hopkins asserts that the Government impermissibly "manufactured" an interstate commerce nexus to come within the reach of the Hobbs Act. That is, he claims that the police purposefully manipulated the object of the conspiracy by inviting defendants in D.C. to engage in a plan to rob a store in Maryland. He argues, as follows:

> Appellant submits that the crime to which he pled guilty was a crime punishable in the District Court solely due to the falsehoods generated exclusively by the undercover agents.

> Had the sham liquor store been located on the other side of Southern Avenue, S.E., the government would have faced a challenge to its jurisdiction. Had the imaginary store not sold liquor, another interstate *nexus* would have disappeared. And had the government targeted the imaginary store owner for robbery as he walked down the street, the government claim to interstate jurisdiction would have evaporated.

> The exclusively local offense of robbery was promoted into an interstate criminal effort based exclusively on the imaginary facts of the undercover operation. Moreover, these were not *ad hoc* falsehoods

that were made up as things went along. They were part of a plan to establish federal jurisdiction.

When federal officers supply the interstate element to otherwise local offenses, reversal is required to maintain the fundamental integrity of the criminal justice system. *United States v. Archer*, 486 F.2d 670, 682 (2d Cir. 1973).

Br. of Appellants at 37.

The parties disagree over the applicable standard of review. Hopkins acknowledges that he failed to raise this claim below, but argues that, under the law of the circuit, subject matter jurisdiction "involves a court's power to hear a case [so] can never be forfeited or waived." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1341 (D.C. Cir. 2004) (citation omitted). The Government, on the other hand, attempts to distinguish a claim of "manufactured" jurisdiction from other subject matter jurisdiction arguments. This is an issue of first impression in this circuit. We need not resolve the question because Hopkins' claim fails under any standard.

The concept of manufactured jurisdiction originates from *United States v. Archer*, 486 F.2d 670 (2d Cir.), *reh'g denied per curiam*, 486 F.2d 683 (2d Cir. 1973). There, the Second Circuit refused to find jurisdiction under a federal act, where the government claimed that certain actions, completely unrelated to its undercover operation, created an interstate nexus. *Id.* at 681-83. Subsequent courts have generally "refused to follow *Archer* when there is any link between the federal [jurisdictional] element and a voluntary, affirmative act of the defendant." *Al-Cholan*, 610 F.3d at 953 (alteration in original) (citation omitted). We followed this approach in *United States v. Taplet*, 776 F.3d 875 (D.C. Cir. 2015), a case

with facts similar to the facts here. In *Taplet*, we held that because "Taplet 'freely participate[d]' in the jurisdictional act, [he could not] claim that the government manufactured jurisdiction." *Id.* at 882 (first alteration in original) (citation omitted). Here Hopkins "freely participated" in the plan to rob the liquor store, so there was a clear link between the federal jurisdictional element and Hopkins' voluntary, affirmative acts.

Hopkins points out that the purpose of the robbery was simply to strip the store owner of his assets. Br. of Appellants at 40-42 (citing cases for the proposition that robberies of private individuals do not affect commerce); Reply Br. of Appellants at 23. This is irrelevant, however. What matters is that Hopkins agreed to rob a store that was engaged in interstate commerce. He does not dispute this. Therefore, the action was covered by the Hobbs Act. *See United States v. Harrington*, 108 F.3d 1460, 1469-70 (D.C. Cir. 1997). In *Harrington*, which involved a robbery of a restaurant that engaged in interstate commerce, we explained:

> We do not rest our holding on the understanding that the defendant was "engaged in interstate commerce" when he participated in the robbery of the restaurant; rather, we rely on the undisputed fact that the *restaurant* was engaged in interstate commerce, and we hold that the Hobbs Act was properly applied here to protect that commerce by punishing its obstruction and delay through robbery.

*Id.* (citation omitted). The same principle applies here. Therefore, we reject Appellant Hopkins' claim of manufactured jurisdiction.

### 2.  Due Process

Hopkins argues that the police officers' conduct in this case "was so shocking to due process values that the indictment must be dismissed." Br. of Appellants at 38; *accord* Pro Se Supplemental Br. at 7. This claim is clearly without merit.

The Supreme Court has recognized that there may be instances "in which the conduct of law enforcement agents is so outrageous that due process principles" are violated. *United States v. Russell*, 411 U.S. 423, 431-32 (1973). We have explained, however, that "such a level of outrageousness is not established by [just] showing 'obnoxious behavior or even flagrant misconduct on the part of the police.'" *United States v. Jenrette*, 744 F.2d 817, 824 (D.C. Cir. 1984) (citation omitted). Rather, "a defendant must establish that the government had committed 'coercion, violence, or brutality to the person.'" *United States v. Hinds*, 329 F.3d 184, 190 (D.C. Cir. 2003) (citation omitted). No such assertion has been made here.

### 3.  Hopkins' Guilty Plea

Hopkins contends that his guilty plea was invalid because there was no factual basis for the plea. In particular, he claims that there was no evidence that he intended to interfere with interstate commerce. He also claims that his Rule 11 colloquy was ineffective because he was not made aware that a Hobbs Act crime requires an effect on interstate commerce, nor was he made aware that a conspiracy requires an agreement with his co-conspirators, and not simply with the undercover police officers.

Federal Rule of Criminal Procedure 11 requires that, for a guilty plea to be valid, "the court must determine that there is a factual basis for the plea." FED R. CRIM. P. 11(b)(3). A factual basis exists so long as the Government "proffer[s] 'evidence from which a reasonable juror could conclude that the defendant was guilty as charged.'" *United States v. Ahn*, 231 F.3d 26, 31 (D.C. Cir. 2000) (citation omitted). In addition, the court must "inform the defendant of, and determine that the defendant understands," "the nature of each charge to which the defendant is pleading." FED R. CRIM. P. 11(b)(1)(G). However,

> Rule 11 "does not *require* that the district court spell out the elements of the charge in order to inform the defendant adequately." Instead, a plea colloquy must, "based on the totality of the circumstances, lead a reasonable person to believe that the defendant understood the nature of the charge."

*United States v. Moore*, 703 F.3d 562, 569 (D.C. Cir. 2012) (citations omitted).

Here, there was a factual basis for the plea. There is no question that Hopkins agreed to the planned robbery of a liquor store, which was concededly engaged in interstate commerce. And, as other circuits have held, it does not matter whether the defendant *specifically intended* to affect interstate commerce. *See, e.g.*, *United States v. Powell*, 693 F.3d 398, 405 (3d Cir. 2012); *United States v. Williams*, 342 F.3d 350, 354 (4th Cir. 2003). We agree. Accordingly, given the circumstances of this case, there was no plain error.

We also find no plain error in Hopkins' Rule 11 colloquy. The District Court explained to Hopkins that the elements of the crime included "an agreement that existed between you

and at least one other person . . . to interfere with interstate commerce by robbery." Tr. of Plea Hearing at 17 (Sept. 12, 2013), S.A. 85. And it appeared that Hopkins understood the nature of the charge. *Id.* at 17-18, S.A. 85-86 ("[D]id you bring three other people to meet with the . . . undercover officers . . . . And [did] you c[o]me to an agreement with some of the people, or all of the people who were there, that there would be a robbery of a commercial store? THE DEFENDANT: Yes.").

### 4. Hopkins' Sentence

Finally, Hopkins challenges his sentence, contending that the District Court failed to account for various "mitigating circumstances." He also claims that his criminal history was improperly calculated, and that his counsel was constitutionally defective in failing to bring that miscalculation to the District Court's attention. We have carefully reviewed these arguments and conclude that they are without merit and warrant no further discussion.

### III. CONCLUSION

We hereby vacate Appellants' sentences and remand the case to the District Court for resentencing in accordance with this opinion.

*So ordered.*